On Application for Rehearing
The application for rehearing is overruled.
The opinion issued in this case on April 23, 1982, is modified so that the opinion now reads as follows:
This is a set of appeals and a cross-appeal following:
(1) Jury verdicts for Bennie Herring against Hubert Prestwood in the sum of $12,500 for the breach of a contract to sell 320 acres of farm land and in the sum of $12,500 for Prestwood's fraud in suppressing the fact that he had decided not to sell Herring the land after he had signed an option offer.
(2) A judicial denial of Herring's request for specific performance of the contract;
(3) A jury verdict for Ludlum Real Estate against Prestwood on the claim that Prestwood had fraudulently induced Ludlum to void a listing agreement; and
(4) A jury verdict in favor of Prestwood against Ludlum on Ludlum's contract claim for commissions allegedly due under the voided listing agreement.
On December 22, 1977, Prestwood and his wife entered into a listing agreement with Ludlum to sell 1,305 acres of land, including the 320 acres involved in this controversy. The agent for Ludlum was Clifford Harden, who testified that he told Prestwood when the listing agreement was executed that Prestwood could take any part of the land out of the contract at any time he elected not to sell it.
In accordance with the agreement and at Prestwood's request, Harden voided that agreement on January 19, 1978.
On January 14, 1978, Bennie D. Herring and Hubert M. Prestwood, Jr., met and discussed a possible sale by Prestwood to Herring of the 320 acres of farm land. This discussion led to the execution of an option that day by Prestwood and his wife to sell the land to Herring. The terms of the written option offered to sell the property to Herring at a purchase price of $208,000 and provided for a "down payment" of $96,000, with the balance of $112,000 to be payable in equal annual installments for a period of from ten to twenty years at 8% interest, which could not be prepaid in less than ten years.
There was also discussion between the parties concerning a peanut allotment, although it was not included in the written option. There was evidence presented, albeit conflicting, that during the next several months there were several discussions between the parties concerning modifications on the actual financing. Herring also made personal loans to Prestwood during that period.
Herring's attorney notified Prestwood by mail of the acceptance of the option offer and proposed to pay Prestwood $96,000, to be borrowed from the Farmers and Merchants Bank of Ariton and secured by a first mortgage to the bank. He also proposed to give Prestwood a second mortgage in the amount of $112,000, payable in equal annual installments over twenty years at an *Page 55 
interest rate of 8%. There was evidence, however, that the actual loan from the bank would have had to be refinanced after three months, thereby causing Prestwood's $112,000 second mortgage to be subordinate to the refinanced, long-term permanent first mortgage. There was also testimony that Prestwood had already told Herring prior to the time the letter was written that he was not going to sell him the land.
Herring subsequently brought suit against Hubert and Mary Prestwood, alleging fraud concerning both the inception of the option offer and the suppression of the intention not to sell once the option contract was made. The complaint also claimed damages for breach of contract. Ludlum Real Estate intervened in the suit, seeking damages against Hubert and Mary Prestwood for alleged fraud in inducing Ludlum to void the listing agreement, and breach of contract for failing to pay a commission once the option was exercised by Herring.
At the conclusion of Herring's case, both fraud counts were dismissed as to Mary Prestwood and, after all the evidence was presented, the fraud in the inception count was also dismissed as to Hubert Prestwood. Therefore, Herring's case was submitted to the jury upon first a breach of contract claim against both of the Prestwoods and also a claim that Hubert Prestwood had fraudulently suppressed the fact that he had decided not to sell the land after signing the option offer.
In Ludlum's intervention suit, the fraud count was dismissed as to Mary Prestwood, and the case went to the jury upon two theories: (1) Under contract against both Hubert and Mary Prestwood for commissions allegedly due under the voided listing agreement; and (2) the theory that Hubert Prestwood had fraudulently induced Ludlum to void the listing agreement.
After the return of the jury verdicts, the trial judge denied Herring's request for specific performance of the contract.
The trial court also denied the following post-trial motions:
(1) Ludlum's motions (a) for judgment notwithstanding the verdict and (b) to alter or amend judgment;
(2) Prestwood's motion to alter or amend judgments; and
(3) Herring's motions (a) to alter or amend judgment or, in the alternative, for additur, and (b) for judgment notwithstanding the verdict or, in the alternative, for new trial.
All parties except Mary Prestwood appeal.
The issues raised by Herring are as follows:
(1) Whether the court erred in refusing to grant specific performance of the contract;
(2) Whether the jury verdict in favor of Herring on the contract was against the weight of the evidence concerning Herring's damages and, therefore, warranted an additur;
(3) Whether the trial court erred in refusing to give Herring's requested charge number 39, which stated: "Land is unique and its value to a purchaser, particularly one who purchases for his own use, cannot be assessed in monetary terms alone."
Prestwood raises the following issues:
(1) Whether the trial court erred in failing to grant Prestwood's motion for a directed verdict on Herring's breach of contract claim based on the argument that there was no unequivocal acceptance by Herring of the Prestwoods' offer;
(2) Whether the trial court erred in submitting Herring's case to the jury based on both the theories of breach of contract and of fraud.
Ludlum raises the following issue: Whether the court erred in refusing to grant Ludlum's motion for JNOV or, in the alternative, a new trial, due to alleged inconsistent verdicts rendered by the jury on the two plaintiffs' contract claims.
After the jury returned a verdict for Herring for damages resulting from breach of the contract, the court issued a ruling on the request for specific performance of the *Page 56 
contract. The ruling, in pertinent part, states:
 "After hearing the evidence offered before the jury, the court is not reasonably satisfied as to the terms of the agreement between Herring and the Prestwoods. The Supreme Court of Alabama in Dendy v. Anchor Construction Co., Inc., 294 Ala. 120, 313 So.2d 164, stated the controlling principles of law. In substance, it was stated that to authorize the specific enforcement of an agreement to sell land, all terms of the agreement must have been agreed on, leaving nothing for negotiation. The court is of the opinion the terms of the Herring-Prestwood agreement were uncertain and were subject to negotiation.
 "Bennie Herring has exercised his remedies at law and has obtained a jury verdict awarding him compensation for breach of contract. He is not entitled to a judgment of specific performance."
Herring argues that the very fact that the jury found in favor of him on the breach of contract claim establishes the certainty of the contract terms and, therefore, since the value of the land to the purchaser cannot be assessed in monetary terms alone, he should be entitled to specific performance as well. We cannot agree.
A party is generally not entitled to have a contract specifically enforced and, at the same time, recover damages for breach of the same contract. Gulf Oil Corporation v.Spriggs Enterprises, Inc., 388 So.2d 518 (Ala. 1980). See,also, Moore v. Lovelace, 413 So.2d 1100 (Ala. 1982). Under the facts of this case, the trial court did not commit reversible error in refusing specific performance.
Herring next argues that there is no explanation for the jury verdict of $12,500 for the breach of contract other than that the jury must have disregarded some of the plaintiff's evidence or substituted its own judgment because the uncontradicted evidence establishes that his damages were in the amount of $37,738.
The applicable standard of review here is found in Grayson v.Alexander, 347 So.2d 108 (Ala.Civ.App. 1977), wherein Judge Bradley stated:
 "Where damages awarded by a jury are challenged on grounds of inadequacy, an appellate court will reverse only where, after a consideration of all reasonable presumptions in favor of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. This standard, first enunciated in Cobb v. Malone Collins, 92 Ala. 630, 9 So. 738 (1890), has been followed in a long line of decisions. This presumption in favor of the correctness of the jury verdict is strengthened when the trial court refuses to grant a new trial. Cf. Prescott v. Martin, Ala., 331 So.2d 240 (1976); Alabama Power Co. v. Mosley, 294 Ala. 394, 318 So.2d 260 (1975)."
347 So.2d at 110.
The record reveals that Herring's estimate of his losses was based upon many factors, e.g., the weather conditions, the price of labor and fuel, the cost of harvesting the peanuts and the cost of drying the peanuts, the average grade and price, and the estimate of yield based upon a five-year average for the neighboring farms. Based upon this information, he testified that his damage from lost profits from the 1978 and 1979 crop years was $37,738.
Further search of the record, however, turns up additional evidence which the jury could have considered as factors in determining the amount of damages. For instance, the interest payments on the loan would also have had a direct effect on Herring's profit margin.
In addition, the trial court correctly charged the jury that Herring was required to mitigate his damages and that he could recover only such damages as would have been sustained had such care been exercised. Dickerson v. Finley, 158 Ala. 149,48 So. 548 (1909). There is testimony, if believed by the jury, that a basic obstacle to the consummation of the sale was a first mortgage being placed ahead of Prestwood's *Page 57 
purchase-money mortgage. The record shows that, after the parties had been at loggerheads on this issue, Herring received a commitment for a loan whereby he could have purchased the property without causing Prestwood's mortgage to be subordinated to another mortgage. There is also testimony which, if believed by the jury, revealed that Herring did not try to pursue this course to break the deadlock, but rather continued to press for acceptance by Prestwood of the first mortgage arrangement. The jury was free to consider this evidence in their determination of the amount of damages to award. We are not clearly convinced that the verdict is wrong and unjust; therefore, we find no basis for an additur.
We also hold that there was no error in the court's refusal to give Herring's requested jury charge number 39 because the substance of that charge was adequately covered by the court's other instructions on both compensatory and punitive damages as well as fraud. See, Ford Motor Company v. Rodgers,337 So.2d 736 (Ala. 1976).
Prestwood first argues that the evidence did not show an offer and acceptance in this case sufficient for the jury to find that a contract ever existed between the Prestwoods and Herring. He asserts that, at best, the parties were looking to the future to agree upon a contract. In support, he citesElmore, Quillian Company v. Parish Bros., 170 Ala. 499,54 So. 203, 204 (1911), which states:
 "[A]n agreement to enter into an agreement upon terms to be afterwards settled between the parties, is a contradiction in terms, and amounts to nothing."
We also note that, in Alabama, the acceptance of an option to purchase realty, in order to be effectual, must be identical with the offer and unconditional. Asbury v. Cochran, 243 Ala. 281, 9 So.2d 887 (1942).
The record reveals a great deal of conflicting testimony as to what terms the contract contained and whether there was ever a meeting of the minds sufficient to constitute an offer and acceptance.
It also contains, however, sufficient testimony which, if believed by the jury, evidenced that a contract was formed between the parties. That evidence showed that the agreement consisted of a purchase price of $208,000 with a down payment of $96,000. The rate of interest for the repayment period of not less than ten years nor more than twenty years was 8%, and payment was to be made in equal installments on December 1 of each year. All of these aforementioned terms were contained in the written option contract. There was additional testimony which, depending on what the jury believed, showed that both parties either (a) had agreed to allow the buyer to put a first mortgage on the land and that the seller would take the second mortgage, or (b) had agreed that Prestwood's mortgage would not be subordinate to any other mortgage. A written contract can be modified by the subsequent oral agreements of the parties.Hibbett Sporting Goods, Inc. v. Biernbaum, 375 So.2d 431 (Ala. 1979). Therefore, we hold that there was sufficient evidence present for the fact-finder to determine that a contract was formed.
Prestwood next argues that the jury verdicts in favor of Herring for damages for breach of contract and fraud are inconsistent and compel reversal.
In support, Prestwood cites United States Fidelity andGuaranty Company v. McKinnon, 356 So.2d 600, 607 (Ala. 1978), wherein this Court said:
 "May damages be recovered for breach of an existing contract and at the same time recover damages for fraud for representing there was a contract when, in fact, there was none? We think not. The theories of recovery are factually inconsistent, therefore, the general verdict of the jury in this case is self contradictory. It had the effect of finding both that there was a contract and that there was not."
We hold that, while McKinnon, supra, is a correct statement of the law, it only applies to the narrow situation when fraud in the inception of a contract is alleged, *Page 58 National Security Fire and Casualty Company v. Vintson,414 So.2d 49 (Ala. 1982), and, therefore, does not apply to this situation because here Herring's complaint alleged fraudulent suppression of the fact that Prestwood had decided not to sell the land after signing the option offer. In this situation, the plaintiff need not forego seeking damages for breach of contract in order to recover for the fraud. National SecurityFire and Casualty Company v. Vintson, supra.
In its appeal, Ludlum argues that it is entitled to a new trial because the verdict in favor of Prestwood on Ludlum's claim for breach of contract is inconsistent in light of the verdicts returned, first of all, in favor of Ludlum on the claim that Prestwood fraudulently induced Ludlum to void the listing agreement and also in favor of Herring on his breach of contract claim.
Ludlum asserts that, in order for the jury to have rendered a verdict in favor of Herring for breach of contract, it must have determined that there was a contract for the sale of land and that it was breached by Prestwood, which means that the option must have been exercised by Herring. Also, the expressed terms of the listing agreement provided in part:
 "I/We agree to pay you a cash commission of 8 1/4% of the gross amount of any sale, agreement to sell, or exchange, which may be negotiated during the existence of this contract. The term `sale' shall be deemed to include any exchange or trade to which I/we consent. In the event of an exchange or trade, you are permitted to represent and receive compensation from both parties."
Ludlum argues that, since the listing agreement was in effect at the time the option was executed by Prestwood, then Ludlum was entitled to recover the commission also. We do not agree.
The jury agreed with Ludlum that it was fraudulently induced to void a contract which would have provided for the payment of a commission upon a "sale, agreement to sell, or exchange, which may be negotiated during the existence of this contract." That listing agreement was voided on January 19, 1978; therefore, the only way that Ludlum would also be able to recover under the breach of contract claim would be if Prestwood. had entered into a "sale, agreement to sell, or exchange" before January 19, 1978.
The record reveals that, as of January 19, 1978, Prestwood and Herring had only entered into an option agreement to sell the land.
 "An option is `neither a sale nor an agreement to sell. It is simply a contract by which the owner of property agrees with another, that he shall have the right to buy the property at a fixed price within a time certain.'"
Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190 (1943).
Because there was no sale or agreement to sell during the term of the listing contract between the Prestwoods and Ludlum, the Prestwoods did not become obligated to pay any commission to Ludlum. Therefore, Ludlum has no claim for breach of contract.
The judgments of the trial court as to all parties are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING OVERRULED. OPINION MODIFIED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.