These consolidated appeals ensue from judgments against James L. "Skip" Deupree and Bay Development Corporation of Destin, Inc. ("BDC") entered in two lawsuits which themselves were consolidated for trial. Roy Anderson, Jr., Louise Milner Anderson, and Daniel W. Gibson were awarded damages in one action. Anthony Ruffino and Doris Ruffino were awarded damages in the other action. The consolidated trial was held ore tenus
without a jury, based upon allegations of breach of contract and fraud. We affirm.
The litigation arose out of purchases by the Andersons, the Ruffinos, and Gibson of townhouse units in a complex known as Pointe South located in Destin, Florida. Deupree, doing business as BDC, developed Pointe South, which fronted on a body of water known as Old Pass Lagoon. Each of the sales contracts contained a clause pertaining to the seller's constructing and furnishing a boat slip to each purchaser. Pertinent parts of this clause are quoted below:
 "16. BOAT SLIP. That in connection with an agreement for purchase and sale of a townhouse unit at POINTE SOUTH for Lot 10, it is agreed between the parties that in connection with the purchase of said townhouse unit by the Purchaser a boat slip designated as Slip No. 5 of Pier 1 on the proposed 'Plat of Piers' of POINTE SOUTH, Destin, Florida, being part of the overall Phase I Plan as prepared by World Wide Design Associate Architects; shall be included and use thereof shall be transferred to the Purchaser in consideration of the purchase price of the unit as set forth in the Agreement for Sale, and that no additional costs be charged.
". . . .
 "The Seller shall make a bona fide effort to construct said boat slips, and to have them available for use at or about the time the Notice/Certificate of Occupancy is issued on the unit itself for closing. There are no representations by Seller that said slips will be available for use at that time, and such does not create a default by the Seller herein. In the event the unit must be closed prior to the slip being available for use by Purchaser, an amount of $10,000.00 shall be held in an interest bearing account to inure to the purchaser with the Escrow Agent, DESTIN TITLE AND ABSTRACT COMPANY, INC., until said slip is constructed." *Page 1220 
Gibson, who purchased one unit, executed his purchase contract on October 8, 1982; the Andersons executed their purchase contract for two units on May 1, 1983; and the Ruffinos executed their purchase contract for one unit in August of 1982. Gibson's purchase was closed on May 11, 1983, while the Andersons' purchase was closed on May 26, 1983, and the Ruffinos' purchase was closed on June 10, 1983. At the time of these closings, the boat docks in question were approximately 90% completed. Deupree told the purchasers that he had not obtained final approval for the boat slips, but that the documentation would be forthcoming; he said he was expecting approval at any time.
Notwithstanding the terms of the contract pertaining to the escrow account, Deupree and the Andersons agreed that only $1,500 per unit should be withheld, or a total of $3,000. Gibson, however, would not agree to pay Deupree the $10,000 amount designated for escrow, because his boat slip was incomplete, whereupon Deupree insisted that Gibson execute a promissory note and mortgage for $10,000 payable within seven days of completion of the boat slip. Gibson acquiesced in that proposal and executed the documents. The Ruffinos placed $8,000 in the escrow account.
The "approval" referred to above was a submerged land lease from the State of Florida. Florida law required approval from the Florida Department of Natural Resources, Bureau of Land Management, in the form of a submerged land lease, for construction of boat slips or structures over public waters, of which the water in question was a part. Deupree applied for such a lease in August 1982. As required by Florida law, his application was advertised publicly. Some objections having been received by the responsible public officials, Deupree was notified that a public hearing would be required. Deupree was asked to furnish a meeting place and select a date for the hearing. In a subsequent telephone conversation with the bureau director, Deupree inquired as to whether anyone else had gone through a public hearing, and, upon being informed that no recent hearings had occurred, Deupree requested a bureau representative to place his application on "hold," which was done.
Nevertheless, Deupree initiated construction of the boat docks without official approval. When the Bureau of Land Management learned of this construction and asked for an explanation, Deupree stated that he had had nothing to do with the development and had turned everything over to the condominium owners. At that time, none of the sales of the units had been closed. Deupree was informed that he would have to assign his application for a submerged land lease to the unit purchasers. No assignment was made. Instead, Deupree began closing the units, representing to the purchasers that he expected approval at any time.
Later, in July 1984, after their closings, the purchasers learned from representatives of the Department of Natural Resources that Deupree had told them that the individual purchasers were responsible for the construction. And, in 1985, while these suits were pending, the purchasers learned that Deupree himself had put the application for the lease "on hold."
On October 9, 1984, two interpleader actions were filed in Talladega County by the escrow agent, Mark E. Frederick, an attorney in Destin. One petition named Deupree, individually, who is a resident of that county; BDC; and the Ruffinos, whose $8,000 escrow account held for completion of the boat dock was paid into court. The other petition named Deupree, individually; BDC; and the Andersons, whose $3,000 escrow account was paid into court.
The Andersons answered by claiming entitlement to the funds, as did BDC. The Andersons amended their answer to add a cross-claim against BDC and Deupree, claiming breach of contract. Gibson intervened and made a similar claim against Deupree and BDC. The Andersons and Gibson later amended their claims to allege fraud by Deupree in the sale of the units. BDC and Deupree made general denials. Likewise, the Ruffinos claimed breach of contract and fraud against Deupree. *Page 1221 
Trial was had ore tenus without a jury, following which the trial court found for the plaintiffs against Deupree and BDC and awarded damages as follows: The Andersons: $40,000 compensatory and punitive damages; the Ruffinos: $20,000 compensatory and punitive damages; Gibson: $15,000 compensatory and punitive damages. The escrow deposits of the Andersons and the Ruffinos were adjudged credits on their judgments, while the cancellation of Gibson's note and mortgage were adjudged a credit on his judgment.
The defendants present three issues for our consideration, which will be addressed seriatim:
(1) Whether the trial court erred in finding that BDC and Deupree had breached the contract relative to the delivery of the boat slips.
(2) Whether the trial court erred in finding that Deupree and BDC defrauded the appellees.
(3) Whether the trial court erred in "piercing the corporate veil" of BDC and finding Deupree personally liable.
(4) Whether appellees' claims are barred by the statute of limitations.
Our review of these issues is governed by the principle ofore tenus review. That is, the trial court has wide discretion, and there is a strong presumption of correctness in its factual findings, which will not be disturbed on appeal unless they are unsupported by evidence or found to be clearly erroneous or against the great weight of the evidence. Ex parte Coughlin,455 So.2d 18 (Ala. 1984).
 I. The Breaches of Contracts.
It is clear from the express language of the contract, as quoted above, that, "in consideration of the purchase price of the unit," the seller promised that "a boat slip . . . shall be included and use thereof shall be transferred to the Purchaser." Other terms of the contract pertaining to the boat slip (or dock) referred to when it should be furnished, e.g., the money would be held in the escrow account "until said slip is constructed," but not to the obligation to furnish the slip. Even though there was no definite time stated in the contract for the completion of the boat docks, nevertheless "the law requires it to be done within a reasonable amount of time,"Hendrix, Mohr Yardley, Inc. v. City of Daphne, 359 So.2d 792
(Ala. 1978), and "[w]hat is a reasonable time depends upon the nature of the act to be done and all the circumstances relating to that act." Ibid. This question is one for the trier of fact.Drake v. Goree, 22 Ala. 409 (1853). Under the circumstances attendant, the trial court could have found, and doubtless did find, that the completion of the boat docks was a material condition to the purchasers, and that the non-performance of that condition in the time between the execution of the contracts, i.e., August and October 1982 and May 1983, and the filing of these lawsuits, i.e., October 1984, was unreasonable and thus a breach of contract. Clearly such a finding was not palpably wrong under the evidence.
 II. The Fraud Claims.
The finding of the trial court on this issue is also clearly supported by the evidence. That evidence has been referred to earlier in this opinion, and, without repeating it, we note that it discloses that Deupree assured the purchasers at closing that he was expecting final approval for the boat docks "at any time" although: (1) he already knew that the applications for submerged land leases on Old Pass Lagoon were being closely scrutinized; (2) he knew that local objections to his application had been received by the approving governmental agency; (3) he knew that a public hearing would be required; (4) he himself had asked that his application be suspended; (5) his unauthorized construction had been discovered by the approving authority; and (6) he had informed the approving authority that he no longer was involved and that the individual owners were responsible for the unauthorized construction. That evidence *Page 1222 
establishes that Deupree's misrepresentation and concealment concerning the boat docks was material to the purchasers. Each testified that he would not have closed the sale had Deupree disclosed the impediments to approval.
Applicable under the evidence is Code of 1975, § 6-5-102:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
The evidence discloses that rather than acquainting the purchasers at the time of closing with the difficulties he had encountered in obtaining the submerged land lease, Deupree misled them with an expectation of approval "at any time." As seller of the property under contracts which obliged him to furnish boat docks for each purchaser, having initiated the process by which approval would be forthcoming, and having been informed during that process of the impediments to that approval, Deupree stood in a special relationship to his purchasers, who had no knowledge of those impediments, but who relied upon him; therefore, Deupree had an obligation to disclose his knowledge of those impediments at the time he took their money. As this Court stated in Jim Short Ford Sales, Inc.v. Washington, 384 So.2d 83, 86 (Ala. 1980): "A duty to speak depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances." Accord, American Bonding Co. v. FourthNational Bank, 206 Ala. 639, 641, 91 So. 480 (1921), quoting 12 R.C.L. § 70, 71: "[I]f one willfully conceals and suppresses such [material] facts, and thereby leads the other party to believe that the matters to which the statements may relate are different from what they actually are, he is guilty of fraudulent concealment." See also Jackson Co. v. Faulkner,55 Ala. App. 354, 315 So.2d 591 (1975).
 III. Piercing the Corporate Veil.
Whether or not the corporate form will be disregarded in a given case is governed by the principle expressed inBarrett v. Odum, May DeBuys, 453 So.2d 729, 732 (Ala. 1984):
 "We generally accept the concept that a corporation is a separate legal entity, but when this concept is invoked in support of an end subversive of justice, it will be disregarded. Cohen v. Williams, 294 Ala. 417, 420, 318 So.2d 279, 180 (1975) (quoting 18 Am.Jur.2d Corporations
§ 14 at 4559 (2d ed. 1965)). A separate corporate existence will not be recognized when a corporation is so organized and controlled and its business so conducted as to make it a mere instrumentality of another or the alter ego of the person owning and controlling it. Woods v. Commercial Contractors, Inc., 384 So.2d 1076, 1079 (Ala. 1980). A corporation and the individual or individuals owning all its stock and assets can be treated as identical, even in the absence of fraud, to prevent injustice or inequitable consequences. Cohen, 294 Ala. at 421, 318 So.2d at 281."
This Court added that the issue of separate corporate existencevel non was one for the trier of fact. Ibid. Accord, Tri-StateBuilding Corp. v. Moore-Handley, Inc., 333 So.2d 840
(Ala.Civ.App. 1976).
The appellants maintain that Deupree should not have been held liable because "all activities among these parties were transacted in the name of [BDC]." There was evidence, however that BDC, although a corporation on paper, in fact never operated as such. It had neither issued stock nor adopted by-laws. It had no books of account, neither a ledger nor a journal. It had hired no employees. The evidence disclosed a number of business enterprises of various kinds through which personal and corporate funds were comingled and expended by Deupree himself as needs arose. Many of these transactions were made without any records on which to base allocations between business enterprises. For *Page 1223 
example, the testimony of Mr. Deupree's father disclosed:
 "Q. Mr. Deupree, did you invest any money in what has been called [BDC]?
"A. Uh huh.
"Q. You did?
"A. Yes.
 "Q. You don't know how much money you invested, though; do you?
 "A. Not the exact amount over a period of four or five years.
 "Q. You also invested some money in what is called Seacove of Destin?
"A. We have an interest in it.
 "Q. You don't know which ones you put money in, or how much you put in either; do you?
"A. No, sir.
 "Q. Isn't it true, Mr. Deupree, that you and your family members shift money back and forth between the accounts of various named businesses like [BDC], Seacove, Skip Deupree and Company; you don't keep any record of it, you just shift it around whenever one needs money, you put it in?
"A. That's correct."
Under the evidence, this Court cannot find that the trial court committed error in holding James L. "Skip" Deupree liable for fraud and breach of contract.
 IV. Statute of Limitations.
Finally, Deupree argues that the running of the statute of limitations barred the purchasers' fraud claims. This position is untenable. The purchasers' claims were based upon the impediments to the approval of the boat slips, which Deupree concealed. There is evidence that the purchasers did not learn of Deupree's disclaimer of responsibility to the appropriate officials until sometime in July 1984. Whether the purchasers were put on notice at the closings in 1983 or in 1984 was an issue of fact. There was sufficient evidence from which the trial court could have found that the claims were not barred. Code of 1975, § 6-2-3; Mitchell Homes, Inc. v. Tew, 294 Ala. 515, 319 So.2d 258 (1975).
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.