The purchasers of a townhome in Destin, Florida, sued the developers in contract and for fraud on the ground that the developers promised them that they could construct "boat slips" to their townhomes, but the state of Florida would not grant them permits to do so.
 Four issues are presented on this appeal by the developer from a judgment entered in favor of the purchasers on their contract and fraud claims:
 (1) Was it error for the jury to award both compensatory damages for breach of contract and punitive damages for fraud under the facts of this case? (2) Was there sufficient evidence to support a judgment on the fraud claim?
(3) Was the fraud claim time-barred?
(4) Was the verdict of the jury excessive?
 FACTS James L. "Skip" Deupree is a developer.[1] He negotiated with Sam and Louise Butner, husband and wife, and sold them a townhome in a development called Pointe South in Destin, Florida. All of the townhomes in this development were to have individual "boat slips." The sales contract between Deupree and the Butners provided that a "boat slip" would be built and included in the price of their townhome, but slips of this type are difficult to obtain, because of extensive coastal property regulations, and, in order to construct and use one, a "submerged land lease" must be obtained from the Florida Department of Natural Resources ("DNR"). It is undisputed that a boat slip adds substantially to the value of the land to which it is appurtenant.
 Deupree proceeded through proper channels toward obtaining the lease from DNR, but after the request for the lease was advertised, several objections were filed and a public hearing was scheduled. Deupree then asked that the application be put "on hold," but he continued building the boat slips. When he was challenged by DNR, he told DNR that the slips were being built by the individual owners of the townhomes. He told the Butners, on the other hand, that there would be no problem in getting permission from the state to build the slips. According to the Butners, they had already closed on the townhome contract of purchase when they determined that a usable private boat slip would not be provided.
 They sued, claiming breach of contract and fraud. The jury, after a three-day trial, returned a verdict in their favor for $20,000 on their contract claim, and $59,001 on their fraud claim ($1 nominal damages and $59,000 in punitive damages). Deupree then brought this appeal. *Page 244 
We discuss the issues as we have set them out above.
 I First, Deupree argues that the recovery for both fraud and breach of contract was improper because both claims arose from the same transaction and the Butners were thus allowed a double recovery. We disagree. In Alabama, a single transaction can support an award of damages for both breach of contract and fraud. Herring v. Prestwood, 414 So.2d 52 (Ala. 1982). Deupree cites United States Fidelity Guaranty Co. v. McKinnon, 356 So.2d 600 (Ala. 1978), as authority for the proposition that damages cannot be recovered for both breach of contract and fraud on the same transaction. That case is distinguishable. In McKinnon, the fraud that was alleged was a representation that a contract existed when one did not. To make a determination of fraud in that case, the jury had to find that no contract existed; on the contrary, if the jury found that there was a contract, and a breach, then the jury had to find necessarily that there had been no fraud in the defendant's representation that a contract existed. In other words, the jury could not consistently have found that there was liability on both claims. The fraud alleged in this case does not involve a representation about the existence of a contract between Deupree and the Butners, but the question whether Deupree concealed certain facts regarding the difficulty or impossibility of obtaining the necessary submerged land leases for the boat slips.
 In Herring v. Prestwood, supra, this Court addressed the issue of whether a fraud claim and a contract claim based on one set of facts may go to the jury. There, this Court held that "while McKinnon is a correct statement of the law, it only applies to the narrow situation when fraud in the inception of the contract is alleged." Herring v. Prestwood 414 So.2d 52, 57-58 (Ala. 1982) (emphasis added). We hold that the fraud alleged in this case was not fraud in the inception of the contract, but in fraudulent concealments after the contract was made, and that the facts of this case could support both a breach of contract claim and a fraud claim. In National Security Fire Cas. Co. v. Vintson, 414 So.2d 49
(Ala. 1982), this Court discussed the question of recovery of damages for both breach of contract and fraud, as follows:
 "There are two issues crucial to the disposition of this appeal. They are: (1) Should Vintson be allowed to recover for both breach of contract and fraud; and (2) is the amount of damages excessive as a matter of law?
 "There are a number of situations in our law whereby a plaintiff may derive benefits from a contract and yet still recover for tortious action concerning the contract, such as misrepresentation and deceit. There is a line of cases wherein the facts show misrepresentations concerning the goods that the buyer purchases; e.g., a buyer purchases a horse that the seller maintains has two good eyes, and the buyer later discovers that one of the eyes is blind. In this type of situation, the buyer need not forgo the benefit received under the contract in order to sue for the misrepresentations. See, Mutual Savings Life Insurance Company v. Osborne, 245 Ala. 15, 15 So.2d 713 (1943): Moore v. Oneonta Motor Company, 223 Ala. 510, 137 So. 301 (1931); Fairbanks, Morse and Company v. Dees, 220 Ala. 41, 126 So. 624 (1929).
 "Analogous are the cases involving an allegation of bad faith failure to pay insurance benefits wherein a factual situation may reveal an insurance agent's misrepresentations to a buyer that an insurance policy will cover a buyer regardless of a particular medical history that usually would preclude coverage. If the insurance company later refuses to pay, that case may lend itself to allow the buyer to recover not only under the contract itself, but also for the tortious bad faith refusal to pay under the policy. Chavers v. National Security Fire and Casualty Company, 405 So.2d 1 (Ala. 1981).
 "In the above factual situations where benefit is obtained not only for tortious *Page 245 
conduct but also under the contract itself, the existence of the contract was not disputed. Such is not the case here."
 We further find that there was not a double recovery in this case. The trial judge specifically charged the jury on the law of double recovery and specifically instructed the jury that a double recovery could not be awarded to the plaintiffs:
 "And I caution you here, if you found for both parties [i.e. both plaintiffs] in the contract action, and found their compensatory damages in such a sum, you would not repeat the same compensatory damages over here. In other words, he wouldn't be entitled to a double recovery. He could be entitled to compensatory damages for fraud, but not the same compensatory damages which he got for breach of contract. You could find for him on the fraud count and award him a dollar for compensatory damages if he had been awarded over here, and then such sum if you find him entitled to punitive damages."
 We hold that the Butners' recovery on both counts was not contrary to law.
 II Second, Deupree argues that there was no evidence of fraud or fraudulent concealment in this case. We hold that there is evidence of fraud here. The Butners closed the transaction on May 20, 1983. Deupree did not tell the Butners at that time that: (1) he had been informed by DNR that all applications for leases for docks on Old Pass Lagoon (where Pointe South was built) were being closely scrutinized; (2) a number of local objections to his application for a submerged land lease had been filed; (3) a public hearing on the application was necessary; (4) he had requested that the application be put "on hold"; and (5) that he had continued to build the boat slips and had told DNR that the construction was being carried on by the townhome owners.
 Mr. Butner testified that he would not have closed on the townhome contract if Deupree had disclosed the problems he was having getting the boat slips approved. Deupree wrote Mr. Butner a letter on July 26, 1983, assuring him that getting approval for the slips was merely "a matter of time."
 This Court has recently dealt with this same defendant and a very similar fact situation involving owners of other townhomes at Pointe South in Destin. See, Deupree v. Ruffino, 505 So.2d 1218 (Ala. 1987). In that case, this Court held, under very similar facts, that Deupree was liable in fraud under Ala. Code 1975, § 6-5-102, which reads:
"§ 6-5-102. Suppression of material facts.
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case. (Code 1907, § 4299; Code 1928, § 8050; Code 1940, T. 7, § 109.)"
 Because of the similarity of the facts of these two cases and the similarity of the arguments, we quote from the earlier opinion at length:
 "The evidence discloses that rather than acquainting the purchasers at the time of closing with the difficulties he had encountered in obtaining the submerged land lease, Deupree misled them with an expectation of approval 'at any time.' As seller of the property under contracts which obliged him to furnish boat docks for each purchaser, having initiated the process by which approval would be forthcoming, and having been informed during that process of the impediments to that approval, Deupree stood in a special relationship to his purchasers, who had no knowledge of those impediments, but who relied upon him; therefore, Deupree had an obligation to disclose his knowledge of those impediments at the time he took their money. As this Court stated in Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83, 86 (Ala. 1980): 'A duty to speak depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances.' *Page 246 
Accord, American Bonding Co. v. Fourth National Bank, 206 Ala. 639, 641, 91 So. 480 (1921), quoting 12 R.C.L. § 70, 71: '[I]f one willfully conceals and suppresses such [material] facts, and thereby leads the other party to believe that the matters to which the statements may relate are different from what they actually are, he is guilty of fraudulent concealment.' See also Jackson Co. v. Faulkner, 55 Ala. App. 354, 315 So.2d 591 (1975)." (Emphasis added.)
Deupree v. Ruffino, 505 So.2d 1218, 1222 (Ala. 1987).
 We also hold that Deupree's special relationship to the plaintiffs in this case, and the evidence set out above, did suffice to show fraud. As we said in Ruffino, "Deupree had an obligation to disclose his knowledge of those impediments at the time he took their money." The jury's verdict was not plainly or palpably wrong, nor was it against the great weight of the evidence.
 III Third, Deupree argues that the fraud claim is barred by the applicable statute of limitations. The Butners' fraud claim was based on Deupree's concealment of the difficulties he was having with getting approval of the boat slips. Deupree wrote a letter to Mr. Butner on July 26, 1983, and stated that it was simply "a matter of time" until the permits would be issued. Deupree admitted at trial that he did not tell the Butners at closing that there were problems with the boat slips. Mr. Butner testified that he did not know about the problems until April of 1985, when depositions of several DNR officials were taken. The complaint in this case was filed on August 5, 1985.
 Under Ala. Code 1975, § 6-2-3, a fraud claim does not accrue until the aggrieved party discovers the facts that constitute the fraud. Deupree argues that the Butners were told by an attorney in June of 1983 that there was no permit to use the boat slips and that the attorney advised them not to use the slips. Obviously, this presented a conflict in the evidence regarding the date the Butners got notice.
 The question of whether a party discovered, or should have discovered, the fraud earlier, so as to start the running of the statutory period of limitations, is one properly left to the jury. Sims v. Lewis, 374 So.2d 298 (Ala. 1979).
 In this case, the jury heard conflicting evidence on the issue of when the Butners discovered, or should have discovered, the fraud. The trial judge properly instructed the jury on this matter, and no objection was made to the instruction. Because the evidence was disputed, we cannot say, as a matter of law, that the fraud claim was barred by the statute of limitations. The jury apparently found, after hearing the testimony, that the claim was timely filed. That decision is not palpably wrong nor against the great weight of the evidence.
 IV Last, Deupree argues that the $20,000 awarded by the jury for breach of contract was excessive. Our rule of review in such cases is well established:
 "It is well settled that jury verdicts are presumed correct and will not be overturned on appeal unless plainly and palpably wrong and against the great weight of the evidence. Cammorata v. Woodruff, 445 So.2d 867 (Ala. 1984). A trial court's denial of a motion for new trial strengthens that presumption of correctness of the verdict. Smith v. Blankenship, 440 So.2d 1063
(Ala. 1983). The appellate court will review the tendencies of the evidence most favorable to the prevailing party and will indulge such reasonable inferences as the jury was free to draw. Mahoney v. Forsman, 437 So.2d 1030 (Ala. 1983)."
Strait v. Vandiver, 472 So.2d 1034, 1036 (Ala. 1985).
 "It is well settled that we will not interfere with a jury verdict merely because we believe the jury gave too much or too little, and that great caution is exercised before a verdict is disturbed on the ground of excessiveness." *Page 247 
Shiver v. Waites, 408 So.2d 502, 503 (Ala. 1981).
 It is our opinion that the jury verdict was not plainly and palpably wrong in this instance. The contract between Deupree and the Butners contained the following terms:
 "16. BOAT SLIP. That in connection with an agreement for purchase and sale of a townhouse unit at POINTE SOUTH for Lot 12, it is agreed between the parties that in connection with the purchase of said townhouse unit by the Purchaser a boat slip designated as Slip 2 of Pier 1 on the proposed 'Plat of Piers' of POINTE SOUTH, Destin, Florida, being part of the overall Phase I Plan as prepared by World Wide Design Associate Architects, shall be included and use thereof shall be transferred to the Purchaser in consideration of the purchase price of the unit as set forth in the Agreement for Sale, and that no additional costs be charged.
"* * *
 "The Seller shall make a bona fide effort to construct said boat slips, and to have them available for use at or about the time the Notice/Certificate of Occupancy is issued on the unit itself for closing. There are no representations by Seller that said slips will be available for use at that time, and such does not create a default by the Seller herein. In the event the unit must be closed prior to the slip being available for use by Purchaser, an amount of $10,000.00 shall be held in an interest bearing account to inure to the purchaser with the Escrow Agent, DESTIN TITLE AND ABSTRACT COMPANY, INC., until said slip is constructed."
 Deupree here argues that he was not liable on the contract claim, under the doctrine of merger, or, if he was liable, that a liquidated damages clause in the contract limited his liability to $10,000. Neither of these arguments was made in the court below, and we cannot consider them here on appeal. "On appeal this Court is limited to a review of the record alone, and an issue not reflected in the record as having been raised in the trial court cannot be raised for the first time on appeal." Mobile Wrecker Owners Association, Inc. v. City of Mobile, 461 So.2d 1303, 1306 (Ala. 1984). There was substantial evidence before the jury that would have supported the award of $20,000 for the breach of contract relating to the building of the boat slip. The following testimony, given in deposition by the plaintiff's real estate expert, was read at trial:
 "A. Yes. I have an opinion, having worked in this market, as I said, for the last five years and with projects that have both slips and without boat slips. I have a very definite opinion as to what a boat slip is worth, if that's what you're asking.
 "Q. Yes. I think what I'm asking is the value of those townhome units with a boat slip as opposed to the value of those townhome units without a boat slip.
 "A. Well, there is definitely a difference in value, the reason being no one is being allowed to build any boat slips in this area any more. It has become — It's very — Well, let me just say we've got a big boating group that comes here to Destin, and having a boat slip is very important to a large group. Since you cannot build any more, it makes the price go up and up, and that's what's happened with our boat slips in the last year.
 "Q. What is your opinion as to the value of the difference — the difference between a unit with a boat slip and a unit without a boat slip?
"A. At least twenty thousand dollars.
 "Q. And how did you arrive at that figure, please?
 "A. From units that I have for sale and the units that have sold in the past and how the value has gone up and what a person will pay for a unit with a boat slip.
 "Q. Now a minute ago you said the value is twenty thousand. Do you mean by that that the units with boat slips are twenty thousand dollars more than those without boat slips?
"A. Correct.
 "Q. Does that apply to all the units in the complex? *Page 248 
"A. Yes.
 "Q. Now, in arriving at this difference of twenty thousand dollars, did you compare sales of various units in other complexes?
"A. Oh, yes.
 "Q. Tell us about those, if you would. "A. There are only three condominium projects — Well, let's just say there are only three projects on the island that have boat slips. Destin Harbor, which was the original Sun King Towers. Dolphin Point was the original place with boat slips.
"MR. LANDERS: What is the name of that?
 "THE WITNESS: Dolphin Point. They were the originals.
 "Sun King Towers came after that. Then Pointe South came with supposedly theirs. They now have two projects on the end of the island that have not — The projects have been completed, but the boat slips have not because D.E.R. and D.N.R. have stopped them. They told them that they may possibly have them, but there is no guarantee with those two State groups. You can't count on them. They are at such a premium — boat slips — that all I can say is that any of us in real estate, we know what they're worth right now . . . ."
 "Q. . . . And just to recap briefly, the testimony is that the difference between — The difference in the value of the units at Pointe South townhomes with boat slips is twenty thousand dollars greater than those units without boat slips.
"A. Right."
 Under this evidence, we hold that the jury's verdict was not plainly and palpably wrong or against the great weight of the evidence. The trial judge's charge as to the measure of damages for breach of contract was also clear, and it was not objected to by Deupree:
 "Now, in regard to damages which should be awarded in a case of a breach of a contract, the rule is this: Damages for the breach of a contract is that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.
 "Another way to state the rule of damages in regard to damages for a breach of a contract is as follows: Damages recoverable for the breach of a contract are such as are the natural and proximate consequences of the breach, and such as may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made."
 Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.
[1] Both the individual developer and the corporate developer appeal. Deupree is president of Bay Development Corporation of Destin, Inc., and owns half of its stock. For convenience, our references will be primarily to the individual developer.