**FIRST UNION NATIONAL BANK OF FLORIDA, Appellant,**

v.

**PERDIDO MOTEL GROUP, INC., Appellee.**

**PERDIDO MOTEL GROUP, INC., Appellant and Cross–Appellee,**

v.

**FIRST UNION NATIONAL BANK OF FLORIDA, Appellee and Cross–Appellant.**

Nos. CV–91–N–0690–E, CV–92–N–0104–S.

United States District Court, N.D. Alabama, S.D.

Feb. 21, 1992.

---

Robert H. Adams, Charles L. Denaburg, Walter Franklin McArdle, Najjar Denaburg PC, Wanda D. Devereaux, Pappanastos & Devereaux, Montgomery, Ala., for appellant.

Thomas J. Knight, Anniston, Ala., for appellee.

Memorandum of Opinion

EDWIN L. NELSON, District Judge.

I. Background.

This consolidated appeal arises out of bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Alabama involving the Chapter Eleven petition of Perdido Motel Group, Inc. (Perdido).[1] After rejecting the debtor's first proposed plan for reorganization, the United States Bankruptcy Court for the Northern District of Alabama, on September 1, 1989, confirmed the second proposed plan under the so-called "cramdown" provisions of 11 U.S.C. § 1129(b). On appeal, this court reversed and remanded with instructions to the bankruptcy court to enter findings of fact in conformity with the requirements of applicable law. *See In re Cornelison*, 901 F.2d 1073, 1075 (11th Cir. 1990) ("it is imperative that the bankruptcy court clearly state factual findings which support its legal conclusions"). Following remand, the bankruptcy court, on November 9, 1990, entered findings of fact and again confirmed the plan *nunc pro tunc* to September 1, 1989. The creditor, First Union National Bank of Florida (FUNB), again appeals (CV–91–N–0690–E).

On May 7, 1991, FUNB filed an adversary proceeding in the bankruptcy court under the provisions of 11 U.S.C. § 1144 seeking to set aside and vacate the second order of confirmation. After notice and hearing, United States Bankruptcy Judge Arthur B. Briskman, sitting by designation,

---

1. By separate order, and on motion of First Union National Bank of Florida, two separate appeals have been consolidated for disposition in this court.

granted the requested relief and vacated the earlier order that confirmed the debtor's plan of reorganization but, finding no fraud, did so on the basis of 11 U.S.C. § 105 and Fed.R.Civ.P. 60(b). The debtor appeals from that order, and FUNB appeals from the failure of the bankruptcy court to act on the basis of the debtor's alleged fraud (CV–92–N–0104–S).

The court has carefully examined the entire records and applicable provisions of law and, pursuant to Bankruptcy Rule 8012(3), specifically finds that "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Accordingly, the court will decide the appeals on the bases of the records and briefs of counsel and without oral argument.

II. Findings of Fact.

■■■ Findings of fact by the Bankruptcy Judge must be accepted by this court unless they are clearly erroneous, giving due regard to the opportunity of the court below to judge the credibility of the witnesses first hand. *Cornelison,* 901 F.2d at 1075. The deference due the bankruptcy court's factual findings is not applicable to its conclusions of law or findings on mixed questions of law and fact. On such conclusions, this court's review is *de novo. In re Sublett,* 895 F.2d 1381, 1383 (11th Cir. 1990). Judge Briskman's findings of facts, in their entirety, were:

> The Debtor's Second Plan of Reorganization ("Second Plan") was confirmed by the Honorable L. Chandler Watson, Jr., United States Bankruptcy Judge for the Northern District of Alabama, Eastern Division on November 9, 1990. The Second Plan created two classes of secured creditors and two classes of unsecured creditors. Class IV consisted of the secured claim of First Union National Bank of Florida ("FUNB"). Class V consisted of the alleged secured claim of General Electric Capital Corporation ("GECC"), successor-in-interest to RCA. Class VI consisted of the unsecured claims of FUNB and GECC. Class VII consisted

of all other unsecured creditors, including Mid South Equipment and Supply, Inc. ("Mid South").

GECC accepted the Second Plan based upon their $122,619.89 claim being paid in full and because they would continue to receive their payments pursuant to the terms of three existing contracts. GECC has continued to receive those payments.

Likewise, the representation that Mid South would be paid 100% of its claim under the confirmed plan of reorganization was the basis of Mid South's vote to confirm the Second Plan. A note was executed by the Debtor to Mid South on October 10, 1989 for the full amount of Mid South's claim.

Judge Watson's November 9, 1990 order confirming the Second Plan found that GECC's claim of $20,500.00, including interest of 11% per year, was to be paid over 60 months in equal monthly installments of $445.73; Mid South was treated as an unsecured creditor and was to receive an insignificant pro rata share. No disclosure was made to the court which indicated that any treatment inconsistent with the proposed plan would be accorded GECC or Mid South's claims.

The Second Plan would not have been confirmed without the acceptance of GECC and Mid South; however, GECC and Mid South's votes to confirm the plan were based on representations that the claims would be fully satisfied. Neither GECC nor Mid South would have voted to confirm Debtor's Second Plan if their claims were not to be paid in full. However, neither the Debtor nor its attorneys disclosed to the court or other creditors the agreements to pay GECC or Mid South 100% of their claims.

The agreements between Mid South and the Debtor and GECC and the Debtor were not disclosed until after the order confirming the plan was entered on November 9, 1990. FUNB filed its complaint to revoke the Order of Confirmation on May 7, 1991.

Memorandum Opinion at 1–3 (filed Nov. 15, 1991) (Briskman, Bank. J.) (footnote omitted).

III. Issues Presented.

In CV–91–N–0690–E, FUNB raises nine separate issues, most going to the alleged failure of the confirmed plan to comply with various provisions of 11 U.S.C. § 1129. In CV–92–N–0104–S, Perdido claims: (1) the bankruptcy court had no authority to revoke the order of confirmation except in accord with the provisions of 11 U.S.C. § 1144; (2) under § 1144, the bankruptcy court could act only upon a finding of fraud and that court specifically refused to find that confirmation of the plan was procured through fraud; and (3) the bankruptcy court had no authority to revoke the confirmation order while that order was on appeal to this court.[2]

In CV–92–N–0104–S, the order of the bankruptcy court setting aside the confirmation order will be affirmed and, in view of that decision, the appeal in CV–91–N–0690–E will be dismissed as moot.

IV. Discussion.

■ First, the court notes that the bankruptcy court erred as a matter of law in relying upon 11 U.S.C. § 105 and Fed. R.Civ.P. 60(b) for authority to revoke the confirmation order. The applicable statute, 11 U.S.C. § 1144, provides in pertinent part,

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such [confirmation] order *if and only if* such order was procured by fraud.

*Id.* (emphasis added). Bankruptcy Rule 9024 makes Rule 60(b) of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings except that a "complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144" Thus, the texts of the applicable statute and rule do not permit the procedure relied upon by the bankruptcy court. Furthermore, 11 U.S.C. § 105 does not provide authority for the procedure that was

followed. That section does nothing more than authorize the court to issue orders that are necessary to "carry out the provisions of this title." It does not authorize the court to act in contravention of the "provisions of this title."

As noted, the court is bound to accept the factual findings of the bankruptcy court unless those findings are clearly erroneous. *Cornelison*, 901 F.2d at 1075. This court's review of the lower court's conclusions of law and findings of fact on mixed questions of law and fact, however, is *de novo*. *See, e.g., Sublett*, 895 F.2d at 1384. Perdido argues that the bankruptcy court's failure to find fraud is a finding of fact which this court can reverse only upon a determination that it was clearly erroneous. FUNB, on the other hand, argues that it was a conclusion of law which the court reviews *de novo*.

The findings of fact made by Judge Briskman are clearly supported by the record of the proceedings before him, and no party has argued otherwise. The court, therefore, will adopt those findings as its own.

■ The differences between factual and legal findings has been described thusly,

Factual issues involve "what are termed basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators....'" *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963), *quoting Brown v. Allen*, 344 U.S. 443, 506, 73 S.Ct. 397, 445, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.). On the other hand, mixed questions of law and fact involve "the application of legal principles to the historical facts of [the] case." *Cuyler [v. Sullivan] supra*, 446 U.S. [335] at 342, 100 S.Ct. [1708] at 1714 [64 L.Ed.2d 333 (1980)]. As Justice Frankfurter once stated: "Where the ascertainment of the historical facts does not dispose of the claim but calls for interpretation of the

---

**2.** Perdido did not argue this last claim in its brief. Accordingly, the court deems the claim

to have been abandoned.

legal significance of such facts ... the [Federal] Judge must exercise his own judgment on this blend of facts and their legal values. Thus, so-called mixed questions or the application of constitutional principles to the facts as found leave the duty of adjudication with the federal judge." *Brown, supra,* 344 U.S. at 507, 73 S.Ct. at 446 (opinion of Frankfurter, J.).

*Hance v. Zant,* 696 F.2d 940, 946–47 (11th Cir.), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). Judge Briskman made certain findings of historical facts but concluded that those facts did not constitute fraud. In other words, he applied the established law regarding fraud to the facts found by him and determined that the effect of those facts did not amount to fraud. That finding, or the lack thereof, is a mixed question of law and fact that must be reviewed *de novo* by this court.

 When it enacted section 1144, Congress provided no definition of "fraud" but left it to the courts to define. The United States Court of Appeals for the Fifth Circuit has said that fraud needs no definition for "it is as old as falsehood and as versable as human integrity." *Weiss v. U.S.* 122 F.2d 675, 681 (5th Cir.), *cert. denied,* 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941). In order to make out a claim of fraud at common law, the plaintiff must establish the following essential elements:

(a) [A] false representation [usually] concerning an existing material fact, ...;

(b) [A] representation which (1) the defendant knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling the plaintiff that the defendant had knowledge that the representation was true while not having such knowledge;

(c) [R]eliance by the plaintiff on the representation and that he was deceived by it;

(d) [R]eliance which was justified under the circumstances; and

(e) [D]amage to the plaintiff proximately resulting from his reliance.

*Army Aviation Center Federal Credit Union v. Poston,* 460 So.2d 139, 143–44 (Ala.1984) (quoting *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1313 (5th Cir.1977)) (citations omitted). In order to be actionable, a misrepresentation must be material in the sense that the plaintiff relied upon it and acted or refrained from acting based upon such reliance. *Deupree v. Ruffino,* 505 So.2d 1218 (Ala.1987). Where there is no reliance, there can be no fraud. *Sanders v. Kirkland & Co.,* 510 So.2d 138, 142 (Ala.1987).

 Here, the statute speaks of vacating an order of confirmation where that order was procured by fraud. It is thus fraud directed at the bankruptcy court that will provide the foundation for vacating an order of confirmation. In the present circumstances, the court will vacate a confirmation order where (1) the debtor has made a false representation of (2) an existing material fact (3) which he knew was false when made (4) that was reasonably relied upon by the bankruptcy court (5) in issuing its confirmation order.

 Perdido affirmatively represented to Bankruptcy Judge L. Chandler Watson that GECC was to be paid $445.73 per month for five years for a total of 26,-743.80 on its secured claim plus a small pro rata share of other monies. The truth was that Perdido had reached a side agreement with GECC which called for that creditor to be paid 100% of its claim, a total of $122,-619.89. From the time of the confirmation order to the time of the trial on the adversary proceeding, GECC was in fact paid its regular monthly payments reflecting payment of 100% of its claim.

In the case of Mid South, Judge Watson was told, and found in his order, that it was to receive a pro rata share of $1,000 per month for ten years. In the words of Judge Briskman, this was "an insignificant pro rata share." Memorandum Opinion at 3. The truth is that Mid South had been promised payment in full of its claim. On October 10, 1989, after the first confirmation order, Perdido executed a promissory note payable to Mid South for the entire

amount of the Mid South claim. Again, in the words of Judge Briskman,

> The Second Plan would not have been confirmed without the acceptance of GECC and Mid South; however, GECC and Mid South's votes to confirm the plan were based on representations that the claims would be fully satisfied. Neither GECC nor Mid South would have voted to confirm Debtor's Second Plan if their claims were not to be paid in full. However, neither the Debtor nor its attorneys disclosed to the court or other creditors the agreements to pay GECC or Mid South 100% of their claims.

Memorandum Opinion at 3. That Judge Watson relied upon the representations of Perdido in deciding to confirm the plan may be seen from his findings and conclusions. He stated,

> *There being full and fair disclosures* by the Debtor, the Court is unable to find that the Plan has not been proposed in good faith, there being no apparent means employed by the Debtor in its proposal of each plan and which is forbidden by law and none being pointed out by [FUNB], the court finds that the Plan [has] not been proposed by any means forbidden by law.

Findings of Fact and Conclusions of the Court on Confirmation of the Debtor's Modified Second Plan of Reorganization at 13, ¶ 32 (filed Nov. 9, 1990) (Watson, Bank. J.) (emphasis added). It is clear to the court that Perdido first procured the votes of GECC and Mid South to support the reorganization plan by promising them payment of 100% of their claims, a treatment more favorable than that accorded other unsecured creditors with similar claims. It then procured the approval of Judge Watson for its reorganization plan by falsely representing to him that GECC and Mid South were being treated similarly to other unsecured creditors. This conduct was indistinguishable from common law fraud in its many and varied mutations and will be redressed under 11 U.S.C. § 1144.[3]

---

3. The court emphasizes that it is aware of no evidence that either GECC, Mid South or their

V. Conclusion.

With the modifications of the conclusions of law noted herein, the order of the bankruptcy court in CV–92–N–0104–S will be affirmed. The effect of the affirmance in CV–92–N–0104–S is to moot the appeal in CV–91–N–0690–E. Accordingly, that appeal will be dismissed.

counsel participated in any way in misleading the bankruptcy court.