74377. GUINN v. CONWOOD CORPORATION et al.
(363 SE2d 271)

BEASLEY, Judge.
Workers' compensation. The following facts were stipulated: in 1977, Guinn, a Georgia resident, heard of a sales job with Conwood Corporation, a Tennessee tobacco distribution company with headquarters in Memphis, Tennessee. He went to Tennessee in mid-Sep-

tember and again in October to discuss it and obtained the job, which was for work both within and without Georgia. He reported to Dalton, Georgia for training and began work. While working in Bradley County, Tennessee, in December 1984, Guinn suffered an accidental injury over which he claims that Georgia as well as Tennessee has workers' compensation jurisdiction; he has received some compensation under Tennessee law. Commerce Industry Insurance Company is the insurance carrier for Conwood in Georgia, and Conwood is self-insured in Tennessee. The ALJ, the board, and the superior court all denied Georgia-based coverage.

Claimant enumerates four errors which deal with two areas, i.e., whether the contract of employment was made in Tennessee or Georgia, and whether OCGA § 34-9-242 applies.

1. "A finding of fact made by the full Board when supported by any evidence, is conclusive and binding upon the superior court as well as this court." *Subsequent Injury Trust Fund v. Harbin Homes*, 182 Ga. App. 316, 318 (355 SE2d 702) (1987). The ALJ, whose opinion was adopted by the board and affirmed by the superior court, found that claimant twice travelled to Tennessee for interviews and was hired there. Despite claimant's testimony that he was notified he was hired during a telephone call received at his Georgia home, the ALJ found that the contract was not made until his second visit to Tennessee. The record supports these findings.

Claimant contends that, since the contract was an oral employment contract for an indefinite term, it is void under the statute of frauds and did not become viable until he reported to work in Dalton. Under OCGA § 34-7-1, an oral contract of employment for an indefinite period is terminable at will. This does not mean that at the point at which agreement is reached to hire a person at a stated periodic wage there is not a contract which is "made" at the time and place of agreement. "An executory contract of service for no fixed period of time is obviously too indefinite to be capable of enforcement; and it is only by a fiction that the courts are enabled to hold that an engagement at a fixed salary per month, but with no stipulation as to its duration, is a legally binding contract for one month's employment at the agreed wage. . . ." *Odom v. Bush*, 125 Ga. 184, 189 (2) (53 SE 1013) (1906), cited in *Floyd v. Lamar &c. Chevrolet*, 159 Ga. App. 756, 757 (285 SE2d 218) (1981). The case relied on by claimant with regard to the statute of frauds, *Sams v. Duncan & Copeland*, 153 Ga. App. 765 (266 SE2d 546) (1980), was disapproved in *Wood v. Dan P. Holl & Co.*, 169 Ga. App. 839, 841 (315 SE2d 51) (1984) which stated that "an oral employment contract terminable at will is not inhibited by the Statute of Frauds."

2. This conclusion does not, however, resolve the issue of jurisdiction as concluded by the previous judicatories. All relied on OCGA

§ 34-9-242 (former Code § 114-411), which provides: "In the event an accident occurs while the employee is employed elsewhere than in this state, which accident would entitle him or his dependents to compensation if it had occurred in this state, the employee . . . shall be entitled to compensation if the contract of employment was made in this state and if the employer's place of business or the residence of the employee is in this state unless the contract of employment was expressly for service exclusively outside of this state. If an employee shall receive compensation or damages under the laws of any other state, nothing contained in this Code section shall be construed so as to permit a total compensation for the same injury greater than is provided for in this chapter."

The premise below appears to have been that any time an injury occurs outside of this state, the requirements of this section must be complied with or coverage of the injury is denied regardless of other considerations. The Georgia Workers' Compensation Act is not this restrictive. What is crucial is the construction of the first clause, "employed elsewhere than in this state."

This section has remained intact since the original enactment of the Georgia Workers' Compensation Act. Ga. Laws 1920, p. 167. The Act provided that an employee or an employer could opt out of coverage by filing a written notice of this election. Code Ann. § 114-201. This provision for choice was repealed in 1972, making all Georgia employees and employers subject to the Act with certain exclusions not here relevant. Ga. Laws 1972, pp. 929, 931, § 7; *Fox v. Stanish*, 150 Ga. App. 537 (1) (258 SE2d 190) (1979), overruled on other grounds, *Samuel v. Baitcher*, 247 Ga. 71 (274 SE2d 327) (1981).

Claimant relies on *Slaten v. Travelers Ins. Co.*, 197 Ga. 1 (28 SE2d 280) (1943) and *Martin v. Bituminous Cas. Corp.*, 215 Ga. 476 (111 SE2d 53) (1959) for his contention that because he worked out of his home in Georgia and his injury occurred during a work-related Tennessee trip, he is covered.

In *Slaten*, this Court certified the following question to the Supreme Court: Is it essential to the right of a claimant to recover compensation for an injury resulting from an accident which happens while the employee is employed elsewhere than in this state that the contract of employment must be made within this state, where at the time of the accident the employee's residence was in this state? In responding, the Court analyzed at length the interplay between former Code Ann. § 114-110 (now OCGA § 34-9-7), section 114-201 (the repealed opt out section allowing declination of coverage by employees and employers), and section 114-411 (now OCGA § 34-9-242). It summarized as follows: "As to those employees who have accepted the terms of our statute by the method prescribed in the Code § 114-201, ["opt out section"] the provisions of [OCGA § 34-9-242] have no ap-

plication, and the execution of a contract of employment within this State is not necessary to entitle them to receive compensation for injuries sustained outside of the State; but as to employees who have agreed to be bound by the compensation law by the method prescribed in the Code, [OCGA § 34-9-7, signing a contract within this state], and who have not engaged in any work within this State, it is essential that the contract of employment be executed within this State, in order that such employees may receive compensation for injuries sustained while employed outside the State." *Slaten v. Travelers Ins. Co.*, supra at 9.

Upon Slaten's case being further considered by this Court, it was found that the employee was injured in Tennessee in connection with a Tennessee construction job which was not connected with a Georgia job he was also working on for the employer, and his contract had been entered into in Florida. Under these circumstances, the Court applied OCGA § 34-9-242 because it was held that the Tennessee and Georgia jobs were severable, and the Tennessee injury did not arise out of the Georgia employment. *Slaten v. Travelers Ins. Co.*, 70 Ga. App. 665 (29 SE2d 98), cert. dismissed with opinion, 197 Ga. 856. See also *Murphey v. American Mut. &c. Ins. Co.*, 70 Ga. App. 598 (28 SE2d 876) (1944).

Thus, Georgia is in the majority of states which recognizes that an employee has a choice of filing for compensation for injury and that there can be jurisdiction in one of three places: (1) where the injury occurred, (2) where the employment was principally located, (3) or where the contract of employment was entered. Larson, Workmen's Compensation Law, Vol. 4 §§ 87.00—87.12; 87.40; Hilkey, "Actions For Wrongful Death in Georgia," 21 Ga. Bar Journal pp. 339, 354-356 (1958).

Conwood and its insurer argue that because of the repeal in 1972 of the opt-out provision (former Code Ann. § 114-201), the rationale of *Slaten* is no longer appropriate. This does not follow from Georgia's present statutory scheme. The very definitions of "employer" and "employee" contained in OCGA § 34-9-1 (2) & (3) provide that where the employment relation is present in Georgia and the employer has the requisite number of employees, OCGA § 34-9-2 (a), the act is operative. See *Martin v. Bituminous Cas. Corp.*, 215 Ga. 476, 478, supra. The repeal of Code § 114-201 did not narrow the coverage of the act but broadened it, making all employees who work in Georgia now covered with no action on their part other than working in this state or signing a contract of employment in this state regardless of their place of employment (OCGA § 34-9-7).[1]

---

[1] Despite the argument that there is no opt-out provision left in the law, thus making the

Applicable to this case is the whole court case of *Fidelity & Cas. Co. v. Swain*, 90 Ga. App. 615 (83 SE2d 345) (1954). There, the employee worked for a Michigan company. His contract was entered into in Michigan and he was assigned to the southeastern region and worked out of his home in Decatur, Georgia. He was in Mobile, Alabama when he died. Workers' compensation jurisdiction was found in Georgia, the Court stating: "[i]n the present case, . . . the employee was a field representative for a group of southeastern States, for all of which he kept his office and headquarters in his home in Decatur, Georgia, kept his employer's books, did his correspondence, kept samples, and so on. The selling of the goods of his employer in Alabama and the correspondence and bookkeeping in connection therewith were integral parts each of the other. The sales in Alabama were a part of his employment in keeping the books and carrying on the correspondence, for if there had been no sales or efforts to sell to report, there would have been no need of correspondence in reference thereto . . . It was obviously necessary that he maintain headquarters somewhere for this work, all of which was essential to the job he was employed to do, and he kept his headquarters in Georgia, which fact was known to and acquiesced in by his employer . . . [T]he evidence is sufficient to support a reasonable inference that his Georgia employment was connected, at least by his office work and reports, with the particular selling job he was doing in Alabama when he was stricken. It is also reasonably inferable . . . the employee did not, as in the *Slaten* case, have a separate and disconnected employment in each State where he worked, but that he had one connected selling and representation job to do which comprised six States, and that the office and headquarters through which he did this job, except for his personal selling contacts which were maintained by trips to the various distributors, was in Decatur, Georgia." *Fidelity & Cas. Co.*, supra at 617-618.

The cases relied on by the employer and the insurer do not require a different result. *Security Ins. Group v. Plank*, 133 Ga. App. 815 (212 SE2d 471) (1975) involved an employer with fewer than five employees as then required by Code Ann. § 114-107 (now OCGA § 34-9-2, with a three-employee requirement), who nonetheless had provided insurance coverage and was thus estopped to deny coverage. The injury occurred in Georgia, which would give the board jurisdiction regardless of the place of signing of the contract.

*Brown v. Travelers Ins. Co.*, 141 Ga. App. 71 (232 SE2d 609) (1977) involved a Georgia resident who entered into the employment

---

*Slaten* rationale passe, new OCGA § 34-9-2.1, enacted in 1982 allows corporate officers to elect not to be covered by the system.

contract in Tennessee and was injured elsewhere. The only Georgia connection with the employment was his residence and his taking the driver's license test here so he could perform his job. This was insufficient to show a connection with Georgia to the employment.

*Roadway Express v. Warren*, 163 Ga. App. 759 (295 SE2d 743) (1982) concerned a truck driver whose contract of employment was made in Georgia. He originally worked out of Atlanta and was then injured in Tennessee and received compensation under Tennessee law for that injury. Four years later, he returned to work for Roadway out of Nashville. He was injured a second time in Indiana, received Tennessee benefits and then sought Georgia benefits. Coverage was found under OCGA § 34-9-242 because the contract was made in Georgia and the employer had stipulated that it was a qualified self-insurer in Georgia and subject to the act. Some work was still performed in Georgia by claimant. This would not preclude a finding of jurisdiction in Georgia based on the principal location of the employment being in Georgia, had that factually been the case.

In *Aetna Cas. & Surety Co. v. Suits*, 150 Ga. App. 35 (256 SE2d 645) (1979), a Tennessee resident made his contract of employment in Georgia for an employer whose main office was in Tennessee. The employee was injured in Tennessee. The court relied on OCGA § 34-9-242 and held that the employer also maintained sufficient contacts with Georgia to sustain the finding that it had a place of business in Georgia so as to fall within section OCGA § 34-9-242's requirements. Again, this would not have precluded a finding of jurisdiction based on the principal location of the employment relation being in Georgia as in *Fidelity & Cas. Co.*, supra.

*Home Ins. Co. v. Burnett*, 146 Ga. App. 355 (246 SE2d 394) (1978) involved a Georgia resident who was hired by Tri-State Trucking, a Tennessee company, as a truck driver who would work out of Cohutta, Georgia, delivering from General Shale under its contract with Tri-State. The board awarded coverage for the Tennessee accident on the stated basis that under then Code Ann. § 114-411 (now OCGA § 34-9-242), "claimant's state of legal residence is Georgia and that his contract of employment was to be performed in Georgia as well as Tennessee." The board was reversed on the ground that this was an erroneous legal theory *under § 114-411* (OCGA § 34-9-242). There is no indication that the claimant relied below or in this Court on *Slaten, Martin*, or *Fidelity*, supra.

The order of the superior court upholding the board's and ALJ's finding of no jurisdiction was based on an erroneous legal assumption, i.e., that "while the employee is employed elsewhere than in this state" in OCGA § 34-9-242 means "while the employee is working elsewhere than in this state." That construction brought into play the necessity to decide whether the contract of employment was made in

this state, for such would be a requisite condition of coverage. But the correct interpretation of the clause requires that first a determination be made whether the principal locality of the employment relationship was in Georgia. If so, the employee would *not* be "employed elsewhere than in this state," and the conditions of OCGA § 34-9-242 for coverage would not apply. It is only where the finding is that the principal locality of the employment relationship is "elsewhere than in this state" that the prerequisite of a made-in-Georgia contract of employment must be met.

Consequently, the case must be remanded for the board to proceed to find the facts and determine the principal locality of the employment relationship. OCGA § 34-9-105 (c) (4).

*Judgment reversed and case remanded with direction. McMurray, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 4, 1987 —
REHEARING DENIED NOVEMBER 23, 1987 —

*Robert A. Wharton, Jr.*, for appellant.
*G. Scott Hoffman*, for appellees.