Plaintiff Betty Roberts appeals from a judgment for the defendants, Public Cemetery of Cullman, Inc., and Doyle Roberson, the cemetery's sexton. This suit arose out of the burial of Roberts's deceased husband. Roberts's complaint contained three counts, alleging: (1) that the defendants had acted negligently or wantonly (a) in failing to have the grave of her deceased husband acceptable for burial, by allowing it to contain water, (b) in burying her deceased husband in the wrong grave, and (c) in failing to maintain the grave site after burial; (2) that the defendants breached their contract to inter her deceased husband at the grave site owned by her; and (3) that the defendants' conduct involving the burial amounted to intentional infliction of emotional distress (the tort of outrageous conduct or "outrage"). At the close of the plaintiff's case, the trial court dismissed Roberson as a defendant.[1] The trial court directed verdicts for the cemetery on Roberts's contract claim and on her outrage claim; the jury then returned a verdict for the cemetery on her claims of negligence and wantonness.
On appeal, Roberts raises five issues: (1) whether the trial court erred in denying her motion for new trial; (2) whether the trial court erred in not submitting her contract claim to the jury; (3) whether the trial court erred by failing to direct a verdict in her favor on her negligence claim; (4) whether the trial court erred by directing a verdict for the cemetery on her outrage claim, and (5) whether the trial court erred in excluding testimony of statements made by Roberson to Roberts's son, Larry Roberts, who was not a party to the lawsuit. Because this lawsuit was filed after July 11, 1987, the "substantial evidence rule" applies. Ala. Code 1975, §12-21-12.
The basic facts are as follows: The plaintiff and her husband, J.O. Roberts, purchased from the corporate defendant two grave sites at its cemetery, known as the Public Cemetery of Cullman; those grave sites were located in Lot # 134, Block # 802. J.O. Roberts died on July 2, 1987. Funeral services were held on July 5, with burial to occur at 2:00 P.M. The grave had been dug on the morning of July 5. It had rained the day before, but it did not rain the day of the funeral. Because of seepage into the grave, Roberson pumped water out of the grave two times on the morning of the funeral, but he did not check for additional seepage after the second pumping at 10:00 A.M. Winford Chamblee, not an employee of the cemetery, arrived to install the top ground vault at the grave at 11:30 A.M. After setting the vault on boards over the grave, Chamblee pumped water out of the grave.
The graveside service occurred without incident. One of the pallbearers said that he noticed water in the grave, and that when the casket and vault were lowered into the grave, he saw water come up around the sides of the vault. The plaintiff was not present at the grave while the casket and vault were being lowered; she had returned to her car and was waiting to return to the grave site after the vault and casket had been lowered. Larry Roberts said that he saw the water rise around the lid of the vault and that he told the workers to stop; he then went to the cemetery office to get Roberson. Roberson went to the grave site and began pumping water out of the grave. The burial was not completed until a half hour after the first attempt *Page 371 
to lower the vault. The plaintiff saw the pumping operation from her car, but at no time did she ever see water in the grave. As the plaintiff was returning to the grave, Roberson stopped his tractor near her and shouted something at her, but she did not recall anything that was said. At some time after the burial, Roberson said to Larry Roberts, "I had that grave ready, buddy. I am not God. I can't control the rain." The plaintiff did not hear Roberson make these comments.
The plaintiff visited her husband's grave during July, August, and September 1987 and noticed that the grave was sinking and that no sod had been placed on the grave. When she asked Roberson to fix these problems, he told her that the cemetery had buried her husband in the wrong grave. He had been buried in Lot # 133, a plot owned by another family, rather than Lot # 134, the plot owned by the plaintiff. The plaintiff refused to agree to have her husband reburied in the proper lot, and the cemetery made arrangements to have another body moved so that the plaintiff could be given title to Lot # 133. Prior to the plaintiff's filing suit, the cemetery had given her title to both Lot # 133 and Lot # 134.
 I.
Roberts argues that the trial court erred in denying her motion for a new trial, claiming that the jury's verdict on the negligence and wantonness claims was contrary to uncontroverted evidence that the cemetery was negligent in burying her husband in the wrong grave.
The standard for the review of a denial of a new trial motion was set forth in Davis v. Ulin, 545 So.2d 14, 15 (Ala. 1989):
 "Jury verdicts are presumed correct, and this presumption is strengthened by the trial court's denial of a motion for new trial. Therefore, a judgment based on a jury verdict will not be reversed unless it is 'plainly and palpably' wrong. Ashbee v. Brock, 510 So.2d 214 (Ala. 1987)."
While the cemetery admitted negligence in the burying of Roberts's husband in the wrong grave, it did not admit that the plaintiff was entitled to damages. There was no evidence presented of any monetary loss suffered by the plaintiff because her husband was buried in the wrong grave. Roberts argues that the cemetery's admission of negligence left nothing for the jury to resolve, but that argument does not take into consideration the fact that damages arising out of that negligence were disputed, and thus, that a jury question was presented. A claim alleging negligence involves more than proof of negligence (which is made up of proof of the elements of duty and breach of that duty); it also requires proof of the elements of proximate cause and injury. Rutley v. CountrySkillet Poultry Co., 549 So.2d 82, 85 (Ala. 1989). The fact that the cemetery admitted negligence does not mean that it admitted proximate cause and damages as well; in this case, resolution of those two elements was properly left to the jury. We cannot say that the jury's verdict was plainly and palpably wrong.
 II.
Roberts also argues that the trial court erred in not submitting her contract claim to the jury. She claimed that the cemetery breached the burial contract by burying her husband's body in the wrong grave. The trial court explained its reason for not sending the plaintiff's contract claim to the jury:
 "[T]he contract itself does not provide expressly that the defendants will use due care in performing the contract. There is no express provision for that in the contract. And therefore, the plaintiff is not entitled to elect at this point whether to proceed in contract or in tort. I think, if she did the plaintiff would probably have to make an election as to whether to proceed on a contract or proceed on a tort count. . . .
". . . .
 "As I recall the law, when you have a contract that does not expressly provide for due care the law . . . implies a duty to use due care, but does not imply that within the contract. . . . So I think that *Page 372 
the only remedy that you have available to you under these facts is to proceed in tort and that would be that the contract was performed, but was performed in a negligent or wanton manner and will be entitled to go to the jury with regard to damages on those particular claims."
This Court, however, has recognized that claims for tortious conduct and for breach of contract may be maintained in a single suit. See Eidson v. Johns-Ridout's Chapels, Inc.,508 So.2d 697 (Ala. 1987). There we stated:
 "We can appreciate the dilemma faced by the learned trial judge, because this Court has had difficulty agreeing on cases involving the question of whether an action is ex delicto or ex contractu, but we hold that plaintiffs produced at least a scintilla of evidence that the defendants made specific promises to plaintiffs and then failed to perform as promised."
508 So.2d at 701. The Court has long recognized that, while a defendant's failure to exercise reasonable care or to perform the act promised in a contract may give rise to an actionex delicto, such failure also gives rise to an action excontractu when there is a breach of promise. Vines v. CrescentTransit Co., 264 Ala. 114, 85 So.2d 436 (1956). Eidson relied on Waters v. American Casualty Co., 261 Ala. 252, 73 So.2d 524
(1954), wherein an insured had brought an action against its liability insurer. The Court stated:
 "This Court has long since taken the position that under certain circumstances, for the breach of a contract there may be either an action of assumpsit or one in tort. That means that when there is a contract expressed to exercise reasonable diligence in the performance of an act, or when there is a specific contract to do an act, a failure to exercise reasonable diligence on the one hand or to do the act on the other gives rise to an action of assumpsit. But when the contract is to exercise reasonable care to perform the act, a failure to exercise such reasonable care may be redressed by either assumpsit or in tort. When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty — but does not imply a contract — to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached."
Id. at 258, 73 So.2d at 528-29 (citations omitted). See alsoCombined Services, Inc. v. Lynn Electronics Corp., 888 F.2d 106
(11th Cir. 1989) (Alabama law permits plaintiff to recover judgment in actions for breach of contract and fraud).
Here, the trial court ruled that Roberts had to proceed under the tort claim and not under the contract claim, because there was no contract provision stating that the cemetery would use due care. However, there was clearly a breach of the agreement to bury the plaintiff's husband in the specific grave owned by the plaintiff; the defendant did not perform the act promised in the contract. Therefore, the plaintiff was entitled to present her contract claim to a jury, and the trial court's directed verdict on this claim was in error.
We note that the jury's findings against the plaintiff on the negligence claim could be read to indicate that the plaintiff was not entitled to damages. However, in light of the fact that damages under the breach of contract claim were never considered, we do not hold, as a matter of law, that excontractu damages are not recoverable.
 III.
Roberts argues that the trial court erred in not directing a verdict in her favor on her negligence count. As we determined in part I, there was a jury question on her negligence claim. Therefore, the failure to direct a verdict on this claim was not error.
 IV.
Roberts contends that the trial court erred in directing a verdict for the cemetery on her outrage claim. This Court recently stated in Green Tree Acceptance, Inc. v. Standridge,565 So.2d 38, 44 (Ala. 1990): *Page 373 
 "This Court set out the elements of the tort of outrage in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1981). For a plaintiff to recover under the tort, he must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. Inmon, supra, at 365. In order to support a cause of action for the tort of outrage, the conduct complained of must be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society. McIsaac v. WZEW-FM Corp., 495 So.2d 649, 651 (Ala. 1986)."
The defendant's conduct in this case is clearly not so extreme in degree as to go beyond all possible bounds of decency. The evidence showed that seepage of water into graves after a rain is a common problem, and that the defendant took actions to remedy that problem. As to the allegations that the cemetery was not maintaining the grave properly, the evidence showed that there was a drought during that period and that all of the lots in the cemetery were suffering from the effects of that drought. Further, there was no evidence that the cemetery did, or did not, do anything in regard to this grave different from what it did in regard to all the other graves at the cemetery. Therefore, the trial court did not err in directing a verdict for the cemetery on Roberts's outrage claim.
 V.
Roberts's last argument is that the trial court erred in not allowing Larry Roberts to testify as to the statements made by Roberson to him. These statements were clearly hearsay, but Roberts argues that they were not offered to prove the truth of the matter but rather to prove Roberson's state of mind and intent in regard to her claims for outrage and wantonness. As held above in part IV, Roberts's claim for outrage was properly withheld from the jury. As for Roberts's claim that the cemetery was wanton in its preparation and maintenance of the grave, we cannot see how Roberson's statements — "I had that grave ready, buddy. I am not God. I can't control the rain" — have any relevance to that claim. Rulings as to the admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal in the absence of an abuse of discretion. Russellville Flower Craft,Inc. v. Searcy, 452 So.2d 478, 480 (Ala. 1984). We find no abuse of discretion here.
For the foregoing reasons, we affirm the trial court's judgment as to all of the claims, except the claim alleging breach of contract. As to that claim, the judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
MADDOX and HOUSTON, JJ., concur in part and dissent in part.
[1] Roberts does not contest on appeal the dismissal as to Roberson.