A.R. BRASWELL; Harry T. Driggers; Terry D. Howell; Julia Stricklin; Audrey A. Jones, as representative parties on behalf of all members of a class consisting of: all persons or entities joined by the defendant under the Order of April 4, 1985 and all other persons selling to, growing for, or making deliveries of chickens to C. Poultry Company Ltd. and/or ConAgra, Inc., in Coffee County, Alabama, from January 1, 1978 until April 4, 1985, other than the original named plaintiffs, Hulon Barnes; Lamar Jackson, Frank Wilks, Mark Jones, Forrest Powell, and Frances Riley, Plaintiffs–Appellees,

v.

CONAGRA, INC. and/or C–Poultry Company, Ltd., Defendant–Appellant.

No. 90–7643.

United States Court of Appeals, Eleventh Circuit.

July 25, 1991.

Kenneth T. Fuller, Joe C. Cassady, Sr., Cassady, Fuller & Marsh, Enterprise, Ala., Leo A. Knowles, McGrath, North, Mullin & Kratz, Omaha, Neb., for defendant-appellant.

Joe S. Pittman, Stafford Pittman, Pittman, Whittaker & Pittman, Enterprise, Ala., Vreeland G. Johnson, Andalusia, Ala., for plaintiffs-appellees.

Before JOHNSON and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Defendant ConAgra appeals a jury verdict finding it liable for fraud and breach of contract and awarding compensatory damages of $4,550,000 and punitive damages of $9,100,000.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

The plaintiffs represent a class of 268 "growers" who raised broiler chickens for ConAgra. From June 1, 1977, to April 4, 1985, each plaintiff entered into at least one contract with ConAgra to "grow-out" broilers. Under a standard form contract, ConAgra provided the growers with broiler chicks, feed, and medicine. The growers raised the chicks in chicken houses meeting standards set by ConAgra. When ConAgra determined the proper time, it transported all the grown-out broilers to its plant. There, ConAgra employees used the following procedure to determine the payment due each grower: (1) they weighed the truck[1] to obtain the "gross weight"; (2) they removed the broilers and weighed the truck again to establish the "tare weight"; and (3) they subtracted the tare weight from the gross weight to determine the "net weight" of the broilers. ConAgra then paid the growers according to the net weight, using a formula that accounted for the weight gained by the broilers and the amount of feed used by the grower.

### B. *Procedural History*

Five growers initiated this suit in the Circuit Court of Coffee County, Alabama, in 1982. They alleged, among other things, that ConAgra had purposefully misweighed broilers over an eight-year period, thereby committing fraud and breach of contract. During discovery, ConAgra admitted that some of its employees had "randomly" mis- weighed broilers between October 1, 1978, and March 31, 1981, and filed a counterclaim joining all growers for this period ("the admitted-period") for the purpose of admitting liability for breach of contract and paying damages.[2] ConAgra denied any other wrongdoing. In 1988, ConAgra removed the case to federal court.[3]

The jury returned verdicts for the plaintiffs on their claims of fraud and breach of contract for all three periods. It awarded the plaintiffs $200,000 compensatory damages and $1,100,000 punitive damages for the pre-period; $1,450,000 compensatory damages and $5,000,000 punitive damages for the admitted-period, and $2,900,000 compensatory damages and $3,000,000 punitive damages for the after-period. ConAgra filed motions for judgment notwithstanding the verdict ("JNOV"), for a new trial, and for remittitur. The court denied the motions for JNOV and for a new trial, but granted a remittitur of $111,589.51 on the compensatory damages for the admitted period. The court later awarded the growers $1,634,026 in prejudgment interest on the compensatory damages.

## II. STANDARD OF REVIEW

Denial of a motion for JNOV is a question of law subject to *de novo* review. *Finch v. City of Vernon*, 877 F.2d 1497, 1502 (11th Cir.1989). This Court considers all the evidence, not just the evidence that supports the non-movant, in the light most favorable to the party opposed to the motion. *Id.* at 1501–02 (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969)). If the facts and inferences point so strongly in favor of one party that reasonable persons could not disagree, then granting the motion is proper. *Id.* at 1502. If reasonable persons could reach different conclusions, the motion will be denied. *Id.*

---

1. The "truck" containing the broilers actually consisted of a truck and trailer. The trailer held cages containing the broilers.

2. The parties refer to the remainder of the eight-year period as either the "pre-period," from June 1, 1977 to September 30, 1978, or the "after-period," from April 1, 1981, to April 4, 1985.

3. The initial complaint included a number of federal claims which were dropped during the course of the trial, leaving only the pendent state-law claims for decision. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The district court's denial of motions for a new trial will not be reversed absent an abuse of discretion. *Hessen v. Jaguar Cars,* 915 F.2d 641, 644–45 (11th Cir.1990).

## III. ANALYSIS

### A. *The Submission of the Breach of Contract and Fraud Theories to the Jury*

ConAgra argues that the plaintiffs based all their claims on a single act: the mis-weighing of broilers. It contends that its duty to weigh the broilers accurately arose solely from its contracts with the growers. ConAgra therefore argues that the plaintiffs have a claim only for breach of contract. ConAgra asserts that the district court erred under Alabama law by allowing the plaintiffs to submit a claim for fraud to the jury.

■ Federal courts apply state substantive law to pendent state claims litigated in federal courts. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (dicta). The Supreme Court of Alabama "has long recognized that, while a defendant's failure ... to perform the act promised in a contract may give rise to an action *ex delicto,* such failure also gives rise to an action *ex contractu* when there is a breach of promise." *Roberts v. Public Cemetery of Cullman, Inc.,* 569 So.2d 369, 372 (Ala.1990) [4]; *see also Eidson v. Johns–Ridout's Chapels, Inc.,* 508 So.2d 697 (Ala.1987). "Alabama law is clear that where the plaintiff does not seek to rescind a contract based upon fraud, but rather sues for breach of contract and fraud by the defendant in performing the contract, then both the contract and tort claims are proper for submission to the jury." *Marshall Durbin Food Corp. v. Equitable Life Assurance Soc'y,* 834 F.2d 949, 954 (11th Cir.1987), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988) (citing *Herring v.*

*Priestwood,* 414 So.2d 52, 57–58 (Ala. 1982)); *see also Deupree v. Butner,* 522 So.2d 242, 244 (Ala.1988).

■ ConAgra notes correctly that under Alabama law a "mere breach of a contractual provision is not sufficient to support a charge of fraud." *Brown–Marx Assocs., Ltd. v. Emigrant Sav. Bank,* 703 F.2d 1361, 1370–71 (11th Cir.1983). We disagree, however, with ConAgra's assertion that its failure to weigh the broilers accurately was merely a breach of one of the contract provisions and therefore could not give rise to a fraud claim. ConAgra contracted to pay the growers based on the weight of the broilers. It failed to perform that act by committing a fraud, misrepresenting the weight of the broilers. Because of this fraud, the growers accepted lower payments than called for under their contracts. Because the growers did not sue to rescind the contract, the district court correctly presented both the breach of contract and the fraud claims to the jury. *See Marshall Durbin,* 834 F.2d at 954; *Deupree,* 522 So.2d at 244–45; *Roberts,* 569 So.2d at 372; *Herring,* 414 So.2d at 57–58.

■ Finally, despite ConAgra's claims to the contrary, the growers did not receive a double recovery by the district court's presenting both claims to the jury. The court specifically instructed the jury that, although it could find against ConAgra on both the breach of contract and the fraud claims, it "should independently decide whether the plaintiff[s] should recover on each of the two claims or on both of the two claims." Moreover, the court properly charged the jury that Alabama law bars double recovery of compensatory damages for a fraud claim and a contract claim based on a single transaction. *Deupree,* 522 So.2d at 244–45. The district court specifically instructed the jury that if it found the defendant guilty of both breach of contract and fraud, "you [the jury] can-

---

**4.** In *Roberts,* the plaintiff's complaint charged the defendant with breaching a contract and acting negligently and wantonly by failing to bury the plaintiff's decedent in the gravesite designated in the contract. *Roberts,* 569 So.2d at 370. The district court did not present the

plaintiff's contract claim to the jury, reasoning that the plaintiff was limited to her tort claim. The Alabama Supreme Court reversed, holding that the plaintiff was entitled to submit her contract claim as well as her tort claim to the jury. *Id.*

not double the amount of damages. Instead, you would award compensatory damages as if [the plaintiffs] had recovered on only one claim."

## B. *The Fraud Claim*

ConAgra argues that the district court erred in denying its motion for JNOV on the fraud claim. It asserts plaintiffs failed to present sufficient evidence to support a prima facie case of fraud. Specifically, ConAgra claims that the plaintiffs failed to show that the ConAgra employees who wrote the payment checks actually knew that the broilers had been misweighed. Moreover, ConAgra contends that any evidence that did exist was limited to the admitted period and was not relevant to the pre- or after-periods. It argues that the jury was impermissibly allowed to presume fraudulent intent in violation of Alabama law.

██ To establish a claim for fraudulent misrepresentation under Alabama law, a plaintiff must show (1) that the defendant made a false representation to the plaintiff, (2) that the false representation related to a material fact, (3) that the plaintiff justifiably relied on the false statement; and (4) that the plaintiff sustained damages as a proximate result. *Sharp Electronics Corp. v. Shaw*, 524 So.2d 586, 592 (Ala. 1987) (per curiam); *see also* Ala.Code § 6–5–101 (1975).

**5.** ConAgra admitted that its employees misweighed broilers during the admitted period. In addition, the plaintiffs presented direct evidence, though disputed by ConAgra, that employees misweighed broilers in the pre- and after-periods. This evidence, consisting primarily of trial and deposition testimony of ConAgra employees, showed that employees misweighed broilers by using a light truck in determining the gross weight and a heavy truck to obtain the tare weight. The second truck was made heavier by adding heavy metal grates to it or by filling up its two 50–gallon gas tanks. In addition, an employee used a wire to alter the scale and artificially decrease gross weight. Although ConAgra claims that there was no testimony that management knew of the misweighing, there was evidence that the night-shift supervisor and other supervisory employees knew of or participated in the misweighing. Moreover, the plaintiffs' experts presented circumstantial evidence, based on statistical analyses of the varia-

██ The plaintiffs presented evidence that (1) ConAgra employees misweighed broilers [5] and represented to the plaintiffs that these false weights were accurate, (2) ConAgra paid the plaintiffs on the basis of these false weights, (3) the plaintiffs justifiably relied on the false weights because ConAgra exclusively controlled the weighing process, and (4) the plaintiffs accepted the inadequate payment in reliance on the false weights. Alabama law makes an employer liable for any fraudulent misrepresentation committed by its employees within "the scope of their employment." *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297, 305 (Ala.1986). The misweighing that occurred was within the scope of the employment of ConAgra employees. In fact, in denying the motion for JNOV, the district court stated that this was not even a disputed issue at trial.[6] Although ConAgra challenged the testimony of its present and former employees that misweighing occurred before and after the admitted period, witness credibility is an issue for the jury. *Finch*, 877 F.2d at 1501–02. Accordingly, the district court correctly denied the defendant's motion for JNOV. *Id.* at 1502.

## C. *Compensatory Damages*

ConAgra argues that it is entitled to a JNOV or a new trial because the compensatory damages awarded by the jury were excessive and not supported by the evi-

tion of the tare weights, which supported an inference that the direct evidence did not reveal the full extent of the misweighing and that the misweighing occurred in the pre- and after-periods.

**6.** ConAgra attempts to resurrect this issue on appeal under a different guise by arguing that the plaintiffs failed to show that the ConAgra employees who wrote the payment checks knew of the misweighing or intended to defraud the plaintiffs. This is a red herring. The record contains evidence that at least some of the employees who did the misweighing knew that they were depriving the plaintiffs of monies. ConAgra cites no Alabama cases, and we have found none, that hold that a company is liable for the fraudulent actions of its employees only if all of the employees who participated in the fraudulent transaction had the intent to defraud.

dence. In particular, ConAgra contends that the evidence proved a limited amount of misweighing occurred only during the admitted period and that the circumstantial evidence presented by the plaintiffs' experts was too speculative to be reliable. The district court denied the motion, but did grant a remittitur of $111,589.51 in the damages awarded for the admitted period because the jury had exceeded by this amount the figure calculated by the plaintiffs' expert, Dr. Davis.

Alabama law controls the issue of compensatory damages. *United Mine Workers, supra.* When a defendant's wrongful act has made it difficult to show with reasonable certainty the amount of the plaintiff's loss, damages may be determined by reasonable inferences from the evidence. *Money Back, Inc. v. Gray,* 569 So.2d 325, 327 (Ala.1990). However, the wrongdoer bears the risk of uncertainty. *Id.*

As noted above, the plaintiffs presented direct evidence that misweighing occurred outside the admitted period. The plaintiffs also presented substantial circumstantial evidence, in the form of expert testimony by Dr. Davis, which suggested that the misweighing was far more extensive than that depicted by the direct evidence. Dr. Davis analyzed more than 45,000 ConAgra weight tickets to determine a "reasonable" tare weight for each truck and used that figure to estimate the total amount of misweighing. He then averaged all other loads for that particular trailer and subtracted the reasonable tare from the average load to arrive at the average amount misweighed per load. Dr. Davis then multiplied the average amount misweighed per load by the total number of loads to arrive at the total pounds of broilers allegedly misweighed.

ConAgra argues that Dr. Davis' calculation of reasonable tare weight is speculative and based on flawed assumptions. It claims that a truck can have only an actual tare weight, which may vary over time, and therefore that there is no such thing as a reasonable tare weight. ConAgra argues that Dr. Davis erroneously assumed the existence of a reasonable tare weight that was constant and that misweighing occurred in every load.

Dr. Davis' testimony was supported by another of the plaintiffs' experts, Dr. Jackson, who testified that Davis' method was an acceptable way of calculating misweighing. Davis' assumption that tare weights should not vary substantially from day to day when the same equipment was used was also supported by the Chief Inspector for Heavy Duty Scales of the Alabama Department of Weights and Measures as well as the testimony of a number of ConAgra weighmasters.[7] Finally, the jury was forced to infer the extent of the damages from the circumstantial evidence because of the character of ConAgra's wrongful act, which by its nature was secretive and undocumented. Accordingly, the district court correctly refused to grant a new trial or JNOV on the issue of compensatory damages.[8]

### D. *Punitive Damages*

Under Alabama law, a jury may award punitive damages if it finds that the defendant committed the fraud with either intent to deceive or reckless disregard of the falsity. *Carnival Cruise Lines, Inc. v. Goodin,* 535 So.2d 98, 103 (Ala.1988). Moreover, "Alabama's common-law rule is

---

**7.** The district court noted that while ConAgra claimed to have weighed its empty trucks every day during the time periods in question it was unable to produce those records which would have established a concrete basis for determining the accuracy of the tare weights.

**8.** ConAgra also challenges the expert qualifications of Drs. Jackson and Davis. Dr. Jackson is the head of the Economics Department at Auburn. Dr. Davis holds a Ph.D. in Management Science from The University of Alabama and

was formerly Dean of the School of Business at Troy State. The district court did not abuse its discretion in qualifying Drs. Jackson and Davis as experts. *United States v. Elkins,* 885 F.2d 775, 786 (11th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990) (holding that district court has broad discretion in admitting expert testimony and that district court's decision qualifying a witness as an expert will not be reversed unless manifestly in error).

that a corporation is liable for both compensatory and punitive damages for fraud of its employee effected within the scope of his employment." *Pacific Mutual Life Ins. Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 1041, 113 L.Ed.2d 1 (1991).

■ ConAgra argues that the issue of punitive damages should not have been submitted to the jury for three reasons. First, it contends that the plaintiffs have a claim only for breach of contract and not fraud and that punitive damages are not available for breach of contract. Second, it argues that the plaintiffs presented no evidence of intent to commit fraud in the pre- and after-periods. Third, it claims that the punitive damage award violates due process because the jury instructions failed to limit the jury's discretion adequately.

ConAgra's first and second arguments are meritless. As noted above, Alabama law permits a claim of fraud and breach of contract to arise from the same transaction. *See Marshall Durbin, supra.* Moreover, the plaintiffs presented direct and circumstantial evidence which supported a finding of fraud in the pre- and after-periods as well as the admitted period.

ConAgra's due process challenge to the punitive damages fails as well. The district court's jury instructions are similar to those approved by the Supreme Court in *Pacific Mutual,* —— U.S. ——, 111 S.Ct. 1037 n. 1 & 1044. The jury was not given unlimited discretion, but was instructed to consider the character and degree of the wrong and the necessity of preventing similar wrongs. Moreover, the district court reviewed the punitive damage award under the factors set forth in *Hammond v. City of Gadsden,* 493 So.2d 1374 (Ala.1986), which include the culpability of the defendant's conduct, the desirability of discouraging others from similar conduct, and the impact upon the parties. The Supreme Court specifically approved these factors in *Pacific Mutual.*

■ Lastly, ConAgra claims that it suffered prejudice from Dr. Davis' statement that ConAgra was a "big, big company". The plaintiffs state that Dr. Davis made this statement in response to a question whether ConAgra's management was aware of the misweighing. After ConAgra objected, the district court immediately struck the answer. Any prejudice that ConAgra may have suffered was cured by the district court's prompt action. Accordingly, we hold that the district court properly submitted the issue of punitive damages to the jury.[9]

### E. *The Pretrial Order*

■ ConAgra argues that the district court abused its discretion by allowing the plaintiffs to violate the pretrial order. Specifically, ConAgra objects to the order of Dr. Jackson's testimony. According to ConAgra, the plaintiffs designated Dr. Jackson as an expert witness to support the findings of Dr. Davis. The district court, however, permitted Dr. Jackson to testify before Dr. Davis. ConAgra claims that it was put in an unfair position because it had no opportunity to prepare for Dr. Jackson's testimony. The plaintiffs note that Dr. Jackson's testimony was founded on a data base constructed by ConAgra's experts. They contend that the testimony was the same as given by Dr. Jackson at his deposition and that Dr. Jackson was subjected to stringent cross-examination.

■ Federal Rule of Civil Procedure 6 gives district courts broad discretion to modify their pretrial orders at trial to prevent manifest injustice and to preserve the spirit and integrity of the order. *Hodges v. United States,* 597 F.2d 1014, 1017–18 (5th Cir.1979). We will not disturb the district court's ruling unless the court so clearly abused its discretion that its action could be deemed arbitrary. *Id.* at 1018. The record supports the plaintiffs' characterization of the circumstances surrounding Dr. Jackson's testimony. Accordingly, the district court's decision to modify its pretrial order was not arbitrary.

9. ConAgra also argues that the punitive damages were excessive in light of its acknowledgment of wrongdoing during the admitted period. As the district court noted, this was not an isolated theft; it was a scheme carried out over an eight-year period. Given the scope of the wrong, the punitive damages awarded were not excessive.

### F. Interest On Compensatory Damages

ConAgra argues that the district court erred in awarding prejudgment interest on the compensatory damages. It contends that the compensatory damages were not a sum capable of being certain.

The Alabama Code authorizes prejudgment interest on damages for breach of contract. Ala.Code § 8–8–8 (1975). The Supreme Court of Alabama has interpreted section 8–8–8 to award prejudgment interest only in those contract cases where the damages are certain or capable of being made certain. *Miller & Co. v. McCown*, 531 So.2d 888, 889 (Ala. 1988). Alabama law also permits an award of prejudgment interest in cases of fraud where the unliquidated damages may be ascertained by mere computation or where the damages are complete at a given time so as to be capable of determination at such time in accordance with known standards of value. *First Ala. Bank v. First State Ins. Co., Inc.*, 899 F.2d 1045, 1064 (11th Cir.1990); *Lapeyrouse Grain Corp. v. Tallant*, 439 So.2d 105, 111–12 (Ala. 1983). Accordingly, whether the theory of recovery is breach of contract or fraud, an award of prejudgment interest is proper only if the compensatory damages are certain or capable of being made certain. *C.E. Sawyer's Indus. Sheet Metal Fabricators, Inc. v. Central Rigging and Contracting Corp.*, 653 F.2d 956, 958 (5th Cir. Unit B Aug. 1981) (per curiam).

In *Miller, supra,* the trial court awarded prejudgment interest for a breach of a timber cutting contract. On appeal, the defendant challenged the interest award on the ground that the volume of timber improperly cut was incapable of being determined, and therefore the amount of damages was uncertain. The Alabama Supreme Court acknowledged that the plaintiffs' and the defendant's "timber volume scenarios have extreme differences in the estimate" of timber volume cut. 531 So.2d at 889. It held, however, that, once the special master had determined the volume of improperly cut timber,[10] the master could ascertain the plaintiffs' damages by applying a simple mathematical formula. *Id.* at 890. The Alabama Supreme Court therefore affirmed the award of prejudgment interest. *Id.*

The district court adopted the magistrate judge's finding that the instant case was similar to *Miller.* According to the magistrate judge, although the misweighing scenarios presented by the plaintiffs and the defendant differed sharply over the alleged volume of misweighing, once the jury heard the evidence and determined the volume of misweighing, the jury could ascertain compensatory damages by simply using the contract formula ConAgra employed to pay the growers.

We agree with the district court. Both parties presented the jury with different estimates of misweighing and damages. The jury apparently found the testimony of the plaintiffs' expert, David Parsons, to be persuasive for it awarded virtually the same amount of damages for each of the three periods as determined and testified to by Parsons. Like the special master in *Miller,* the jury was able to calculate compensatory damages by the application of a mathematical formula. As noted above, prejudgment interest may be awarded on compensatory damages in fraud or breach of contract claims so long as the damages are a sum capable of being made certain. *See Lapeyrouse, supra.* Accordingly, the plaintiffs are entitled to prejudgment interest.

### IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court on all issues.

---

**10.** In *Miller,* the trial court ordered the case submitted to a "special master" who calculated the volume of timber improperly cut. As part of his calculation, the master consulted opposing reports submitted by the parties as well as depositions and exhibits. The special master also made an on-site inspection of the site where the cutting took place. *Miller,* 531 So.2d at 889.